### HOFF v. UNITED STATES et al.
#### No. 15291.

United States District Court
W. D. Washington, N. D.
Nov. 17, 1949.

Alfred O. Holte and Jack M. Tuell, Edmonds, Washington, for libelant.

Bogle, Bogle & Gates and Edward S. Franklin, Seattle, Washington, for respondent.

BOWEN, Chief Judge.

In this case, libelant became a member of the crew of the S.S. Earl A. Bloomquist, an American vessel operated by the respondent American Pacific Steamship Company, in the month of August, 1947. He was then a young man less than thirty years of age, and had during the World War II years been a prisoner of war of the Germans, had been confined in their concentration camp, and had been required to do manual labor for the German authorities during the time that he was their prisoner of war.

During part of that time, at least, he was subjected to very close confinement and poor and insufficient food. Part of the time, when he was doing hard work on the railroad for the German Government, he received better food. Part of the time while such prisoner of war, his weight was much below normal and part of the time it was normal.

After the close of World War II, he was returned to his home country of Holland, and soon thereafter began service in the Merchant Marine of his native country. In 1946 he came to America, and shortly joined the American Merchant Marine. After some experience with one or more other vessels, he became a member of the crew of the S.S. Earl A. Bloomquist upon a voyage from San Francisco to Seattle, San Pedro, the Panama Canal, Curacao, Lisbon and Mediterranean ports and return to San Francisco.

On the outward leg of the voyage, and particularly that part from Curacao to Lisbon and during later stages of the voyage, libelant and other crew members in the black gang or engineroom department were given an opportunity to do spray painting in the engineroom in the nature of overtime employment. This work was not ordinary work and neither libelant nor other seamen employed in the engineroom was absolutely required to do it. They, however, were permitted to do it and were paid overtime wages for such spray painting.

The libelant and others were supplied by the respondent ship operator with mechanical respirators for their protection against ill effects of the spray painting and of its emanations. One of such respirators, or at least a respirator of the same type as the respirators made available to libelant and his fellow seamen, is in evidence in this case as libelant's Exhibit 3.

There is some dispute as to whether it was a suitable instrumentality to reason-

ably protect libelant from injury from mist, gases and vapors and like emanations experienced in connection with the spray painting work. The Court is of the opinion and finds from a preponderance of the evidence that the regular and consistent use of this type of respirator would have served a useful purpose in connection with the precautions reasonably needed to be taken against injuries to the seamen and particularly to the respiratory systems of the seamen while engaged in the spray painting work.

The vessel in question was not equipped with forced or pressurized ventilation produced by machinery on board the ship, but was equipped with the usual natural air current ventilators of the cowl type. In ordinary weather and wind current conditions, doubtless such ventilators as the Bloomquist was equipped with might have been sufficient, but the vessel during the time when the spray painting work was being done moved through some calm and very hot weather when the ventilation in the engineroom accomplished by means only of these cowl ventilators in the presence of the spray painting work was insufficient and inadequate, and such inadequacy occurred not every minute and every hour of the spray painting work, but from time to time as the spray painting work was being done.

The spray painting work produced some mist, gases and vapors which adversely affected the respiratory systems of the libelant and his fellow seamen while doing the spray painting work. The witness Cooper, a wiper, testified in effect— I am not using his words—that as a result of such characteristics accompanying the spray painting, he and others experienced a stopping up of the nose, and during the work he went topside for air from time to time.

The witness Dannenberg, an oiler, testified that this spray painting caused him to cough, and that another oiler and two wipers also coughed, and "we beefed it over among ourselves".

The evidence and a preponderance thereof received in this case requires the Court to and the Court does therefrom find, conclude and decide that the vessel was for the purpose of carrying on this spray painting work in the engineroom inadequately and improperly ventilated, resulting in a negligent and unsafe condition in and about the ship at the place and time when the libelant and his fellow seamen were doing the spray painting work, and that as a proximate result thereof the libelant and others of his fellow seamen were caused to cough and to experience difficulty in their breathing and irritation and injury to the membranous lining of their lungs. The libelant, who was at the time afflicted with an active tubercular condition in his left lung, was caused to cough and to hemorrhage and to experience an aggravation and worsening of his tubercular condition in the left lung, which libelant himself was not aware of prior to the time of the injury now mentioned, and as a matter of fact, the libelant did not become aware of his condition until some time after the voyage ended.

The preponderance of the evidence in this case convinces the Court that spray painting was not customarily done upon Liberty ships, that it had been done on some ships only when there was forced ventilation such as was produced by ventilating machines on board the vessel, and that there were no such ventilating machines on the Bloomquist on which libelant was working when he was injured. Respondent was thus negligent in not providing suitable ventilation in the engineroom while libelant was spray painting there.

The Court, however, from a preponderance of the evidence finds, concludes and decides that the libelant was contributorily negligent, which contributory negligence contributed proximately to produce the injuries sustained by libelant, in the following particulars: that he did not make reasonable and necessary use of the respirators available to him; that he did not seek and obtain medical advice as to his condition or apply to the respondent to furnish medical assistance and cure within a reasonable time after the

termination of the voyage; and that after he did receive medical assistance at the Seattle Marine Hospital, he refused to continue further greatly needed medical treatment at that Hospital and, against medical advice received at that Hospital, he left that Hospital and returned to his home, and for approximately three months thereafter neglected to place himself under the proper supervision and treatment of a doctor, and otherwise omitted to take proper care of his condition.

■ The Court, however, in evaluating the evidence of the respective negligence of the respondent and of the libelant, finds, concludes and decides that in comparison the negligence of the respondent was greater than that of the libelant, and this being an admiralty case and being otherwise a case where the rule of comparative negligence applies, the Court finds, concludes and decides that the negligence of the libelant was one-half as great as the negligence of the respondent; that, on account of loss of earnings and pain and suffering and general damages, the libelant, on account of the injuries and damages sustained by him as a result of respondent's and libelant's own negligence, has been damaged in the total sum of $15,000, and that libelant is entitled to recover that sum on account of general damages against the respondent, less one-half thereof due to the reduction of the amount of his recovery made necessary by libelant's own contributory negligence, with the result that on account of general damages and loss of earnings, respondent is liable to libelant on account of libelant's first cause of action in the remaining sum of $7,500.

■ With respect to alleged negligence for failure to provide adequate medical care, the Court finds, concludes and decides that libelant take nothing on account of such alleged negligence for the reason that the medical attention and assistance which respondent provided at Tunis and Haifa constituted a reasonable discharge of respondent's obligation to provide reasonable medical care. In that connection, the respondent was not obligated by the law to provide an American doctor on board the vessel, but under the circumstances respondent was required to supply a reasonably competent doctor at the ports where the vessel touched, and it was the duty of the respondent to have such doctors at those ports to examine libelant and to prescribe for and treat the libelant in accordance with the standards of reasonably competent medical advice in those ports, and this respondent did.

In other words, the Court finds from a preponderance of the evidence, that respondent did all it reasonably could to provide reasonable medical care and assistance for the libelant at all possible places where it could have been supplied.

With respect to the cause of action for maintenance and cure, the Court finds that anything in reality lacking in that respect was caused by the willful conduct of the libelant himself. The Court does not deny to libelant the right, if he chooses, to refuse to accept the medical care and hospital care and maintenance provided for and offered to him by respondent, but if he elects not to accept such reasonable provisions as respondent has provided and does provide for him, then his choice of other medical advice and other hospital care and other maintenance will have to be at libelant's own expense.

■ The Court finds, concludes and decides from a preponderance of the evidence that the libelant on January 25, 1948 left the ship in San Francisco and did not apply for medical treatment until February 17, 1948 when he entered the Seattle Marine Hospital for examination and treatment, and of his own choice decided not to apply for and not to accept medical care during that time prior to so entering the hospital. Accordingly, he is not entitled to an award for maintenance and cure during that time.

■ He is, of course, not entitled to the reasonable cost of maintenance during the time he was in the Marine Hospital, and because he left the Hospital of his own choice and against medical advice received by him at the Hospital, he is not entitled to recover from respondent any-

thing for maintenance while he so refused to accept the hospitalization, maintenance and care at the Marine Hospital in Seattle, which was a reasonable discharge by the respondent of the respondent's obligation to furnish medical care, hospitalization and maintenance during the time of his refusal to accept it.

Nothing said by the Court in the foregoing shall in any way operate to the prejudice of such right as the libelant may have for maintenance after he has reached an arrested stage of recovery in his tubercular condition.