Joseph F. GARDNER

v.

SINCLAIR REFINING COMPANY.

No. 303.

United States District Court,
E. D. Pennsylvania.

March 18, 1955.

Freedman, Landy & Lorry, Philadelphia, Pa., for libellant.

Krusen, Evans & Shaw, Philadelphia, Pa., for respondent.

CLARY, District Judge.

This is an action for maintenance and cure by libellant, a seaman. From pleadings and proof I make the following

### Findings of Fact

1. Libellant, Joseph F. Gardner, an American merchant seaman, was in the employ of the respondent as a wiper on board the S. S. "Flagship Sinco", a merchant vessel owned, operated and controlled by the said respondent, from January 26 to May 27, 1953.

2. Prior to joining the said vessel, libellant was examined by a physician in behalf of the respondent and found to be physically fit and free of any symptoms of a hernia.

3. On the 12th day of February, 1953, while the vessel was at sea, libellant suffered a strain and sharp pain in the left side of his groin while engaged in removing a container of ice from the ice-making machine on board the said vessel.

4. This strain induced an inguinal hernia on the left side which became evident as the extrusion gradually grew in size. The pain, however, was not disabling, and the libellant continued with his duties.

5. On the 15th day of April, 1953, libellant purchased a truss and thereafter wore it to obtain relief and support while he continued to serve aboard the vessel.

6. On the 27th day of May, 1953, libellant was discharged from the service of the vessel for reporting late to duty. He informed the Master of the vessel of his injury and the fact that he had been wearing a truss and would now seek hospital attention.

7. On the 9th day of June, 1953, the libellant reported to the United States Public Health Service Outpatient Clinic in Philadelphia, from where he was referred to the United States Public Health Service Hospital in Baltimore, Maryland, where he was admitted. A hernioplasty on the left side was performed on the 12th day of June, 1953. Thereafter the incision became infected. On the 3rd day of July, 1953, the libellant was discharged from the hospital with an estimated disability of five weeks. He was advised by the United States Public Health Service Hospital to return to the Hospital in Baltimore or the Clinic in Philadelphia on or about August 7, 1953 for a follow-up examination.

8. Within a short time after his discharge from the hospital, infection again set in and the incision drained. Libellant had been instructed at the hospital to apply peroxide to the incision during his convalescence and he did so as prescribed by the physicians at the hospital. The infection persisted, however, and although libellant had been advised to report to one of the branches of the United States Public Health Service on or about August 7th, he failed to so report and did not again report to the United States Public Health Service Hospital in Philadelphia until October 9, 1953, whereupon he was referred back to the United States Public Health Service Hospital in Baltimore, Maryland.

9. Libellant re-entered the United States Public Health Service Hospital in Baltimore on the 10th day of October, 1953, and was discharged on the 12th day of November, 1953, having been treated for a draining sinus from the previous left inguinal hernioplasty. The discharge certificate provided that the libellant was not fit for duty for four weeks.

10. The period of libellant's convalescence after his second admission lasted until December 10, 1953.

11. The libellant at the time he joined the vessel was a member in good stand-

ing of the National Maritime Union, C. I. O. There was subsisting by and between the said Union and the respondent an agreement as to working conditions, which provided that maintenance and cure up to June 15, 1953 was to be compensated for at the rate of $6 per day, and $8 per day thereafter.

12. The libellant is entitled to maintenance and cure from May 27 to June 9, 1953, at $6 per day, and from July 3 to October 10, 1953, and from November 12 to December 10, 1953, at $8 per day, making a total of $1,104.

### Discussion

 The only problem that affords the Court any difficulty in this case is the failure of the libellant to report to the hospital on August 7th, 1953 as directed. There is no doubt in the mind of the Court that he did sustain a hernia in his service of the vessel, even though he never made a report of the occurrence to his superior officers. He mistakenly thought he had to serve a certain number of months on the vessel to obtain a paid-for vacation and because of this mistaken assumption made no report to his superiors. I do not consider the interval between May 27th and June 9th as an unreasonable waiting period before he entered the hospital the first time. Having been at sea for many months, he testified that he had certain business to attend to before he went into the hospital, which explanation strikes the Court as reasonable.

 Respondent contends, and it cannot be disputed, that the facilities of the United States Public Health Service were at all times available to the libellant. Respondent further contends that failure of the libellant to make use of available medical service on and after August 7th constitutes willful misconduct which forfeits his right to maintenance and cure. Having seen the libellant and having heard him testify, I do not so consider it. The libellant impressed the Court as a gentleman of fine character and his action in not seeking the medical assistance of the United States Public Health Service does not stem from any willful act on his part. The Court rather gathered the impression that during the time in question, from August 7th to October 9th, 1953, the libellant was hoping that his self-administered treatment would prove effective. Added to this was the fact that he was without funds and the only person who could have transported him by private conveyance was his son, a working man, who had to work every day to support himself and his own family. I do not feel that this case falls within the scope of the rule laid down in Hoff v. United States, D.C.N.D.1949, 87 F.Supp. 909. In that case, Hoff, the libellant had left the hospital against medical advice and returned to his home where he neglected to place himself under the supervision and treatment of a doctor. While the actions of the libellant in the instant case may warrant the conclusion that he erred in judgment, I do not consider them to be of such a nature as to warrant a forfeiture of his right to maintenance and cure; see Loverich v. Warner Co., 3 Cir., 1941, 118 F.2d 690; TriantaFilos v. United States, D.C.E.D. Pa.1949, 87 F.Supp. 965.

 Libellant claims that he was not fit for duty until Christmas of 1953. The record of the United States Public Health Service does not support this. It was determined that he would be fit for duty in four week's time when he was discharged on November 12th and he was advised to report back for final discharge on December 10, 1953. It is only fair, therefore, that the liability of the respondent should terminate on that date.

### Conclusions of Law

1. This Court has jurisdiction over the parties and subject matter.

2. Libellant suffered a hernia while in the service of the respondent's vessel and thus was entitled to the benefit of maintenance and cure during the period of his disability and while he was receiving treatment and care for the injury and his postoperative condition.

**228**

3. The libellant did not forfeit by willful misconduct his right to recover maintenance and cure by treating himself during the period following his first discharge from the hospital. The maximum improvement of the libellant resulting from medical attention, convalescence and care occurred on December 10, 1953.

4. Libellant is entitled to recover maintenance and cure between the dates of May 27 to June 9, 1953; July 3 to October 10, 1953, and November 12 to December 10, 1953.