**Cleveland B. SAWYER, Plaintiff,**

v.

**CALIFORNIA TANKER COMPANY, Defendant.**

**Civ. A. No. 874-54.**

United States District Court
D. New Jersey.

Jan. 8, 1957.

Jerome L. Yesko, Paterson, N. J., for plaintiff.

Carpenter, Gilmour & Dwyer, Jersey City, N. J., Burrell Ives Humphreys, Jersey City, N. J., for defendant.

MODARELLI, District Judge.

This is a libel brought upon two causes of action, one for damages for alleged breach of warranty of seaworthiness, and the other for maintenance and cure. From the pleadings and proof at a trial without a jury, I make the following:

Findings of Fact

1. Plaintiff, Cleveland B. Sawyer, was employed by the defendant as a pumpman on June 7, 1953, on the late afternoon of which day he boarded the defendant's oil tanker, the S.S. Fort Mims, at Perth Amboy, New Jersey.

2. Plaintiff was examined by a physician on behalf of the defendant herein and found fit for duty prior to joining said vessel.

3. While the vessel was in port, plaintiff was assigned the task of attending the ballasting operation, his main duties being to see that the tanks did not overflow and observe that the pumps were functioning properly.

4. Plaintiff discovered that there was leakage from the pumps and that some oil had settled on top of the bilge in the pumproom. Some oil fumes were also apparent to the plaintiff.

5. After the vessel had put to sea, plaintiff became ill while attending his duties and some time around midnight sought assistance from the First Mate, Mr. Waterman, who promised to send a seaman to help the plaintiff.

6. The seaman made an official report to the First Mate that plaintiff was not found in the pumproom but was discovered asleep in a corner of the shelter deck. During plaintiff's absence from his duties, one of the tanks overflowed onto the deck.

7. Plaintiff had consumed two drinks of alcoholic beverage during the afternoon prior to boarding the vessel and two drinks after going aboard, but I am unable to conclude therefrom that he was in an intoxicated condition.

8. I find that the leakage from the pump was a normal incidence of their functioning and that the oil fumes in the pumproom were not excessive considering the type of vessel in question.

9. On June 8, 1953, the plaintiff was called upon to assist the Chief Pumpman in opening a "frozen" valve, using a 36″ Stillson wrench for the purpose. In performing this operation, the wrench slipped, the handle striking the plaintiff in the abdomen. This incident was not reported to those in command. Plaintiff continued to work throughout that day.

10. The following morning plaintiff complained to the Purser that he had been expectorating blood and that he was ill from the gas fumes inhaled during the ballasting operation. He also reported that he had suffered gall bladder trouble. Plaintiff refused the offer to enter the hospital quarters aboard, preferring instead to return to his room. An ice bag was provided him.

11. Later, on the afternoon of the same day, plaintiff returned to the Purser complaining of nausea and vomiting. The Purser administered epsom salts. On a return visit milk of magnesia was given to the plaintiff. The Captain radioed the Coast Guard and the advice received therefrom was followed.

12. At the port of destination, Harbor Island, Texas, on June 13, plaintiff was discharged and given a marine ticket which would admit him to any United States Public Health Service Hospital. The nearest of such institutions was located at Galveston, Texas.

13. Plaintiff was informed that the hospital in the nearest city, Corpus Christi, was closed on the day of his discharge, a Saturday, and that the marine hospital at Galveston was also closed. He was not provided with the means to get to the nearest marine hospital. Plaintiff boarded a bus in Corpus Christi and journeyed to Norfolk, Virginia, where he stopped to rest and take medicine at his sister's home before proceeding to the

United States Public Health Service Hospital, Staten Island, New York.

14. Plaintiff was an out-patient at this hospital from June 19, 1953, to June 26, 1953; he was confined to the hospital from July 13–31, 1953.

15. The plaintiff's illness on board was an attack of gastritis from a gall bladder condition.

16. Plaintiff was injured in the course of his employment by his own negligence which was not gross negligence or willful neglect of orders.

### Conclusions of Law

1. This court has jurisdiction over the parties and the subject matter.

2. The S.S. Fort Mims was a seaworthy vessel during the period of June 7, 1953, to June 13, 1953.

3. Plaintiff was injured by his own negligence and taken ill while in the service of the defendant and on a vessel owned and operated by it and while he was employed thereon as a pumpman.

4. The defendant's medical treatment during the voyage was in accord with accepted standards of care.

5. Plaintiff did not forfeit by willful misconduct his right to recover maintenance and cure by his conduct prior to boarding the vessel, on board, or after discharge from the vessel's service.

6. Plaintiff is entitled to recover the expended costs of transportation from Harbor Island, Texas, to Staten Island, New York, and maintenance at the rate of $8 a day for the period of out-patient treatment, June 19, 1953, to June 26, 1953, inclusive.

### Opinion

 This action was brought under the Jones Act, 46 U.S.C.A. § 688. The gravamen of the complaint for the first cause of action alleges negligence and damages under that law for alleged breach of warranty of seaworthiness. The second cause of action is for maintenance and cure. Under the Jones Act, the seaman must allege and prove negligence which may embrace both the failure to supply and maintain a seaworthy vessel properly equipped and manned, Stevens v. R. O'Brien & Co., 1 Cir., 1933, 62 F.2d 632 and negligent acts of master or crew members. Baltimore S.S. Co. v. Phillips, 1927, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069. The seaman is not required to choose between negligence and unseaworthiness as a basis of his action. Yates v. Dann, 3 Cir., 1955, 223 F.2d 64. Plaintiff seeks to predicate liability for unseaworthiness on two grounds, defective ventilation in the pumproom and defective tools.

Plaintiff alleged that while working as a pumpman he became gassed and groggy from oil fumes escaping from leaky oil valves which could not be carried off because of defective ventilation. There is sharp conflict of testimony as to the condition of the ventilators. Plaintiff sought to testify that a fellow employee, now dead, told him that one of the ventilators was not working. The hearsay character of such testimony deprives it of any evidential value. There is abundant evidence that the ventilation was adequate. Indeed, even assuming that one of the blowers was not functioning due to temporary mechanical defect, that would not require a finding of unseaworthiness. The Third Circuit has noted that "the doctrine of unseaworthiness does not extend so far as to require the owner to keep appliances which are inherently sound and seaworthy absolutely free at all times from transitory unsafe conditions resulting from their use * * *." Cookingham v. United States, 3 Cir., 1950, 184 F.2d 213, 215. The "transitory" doctrine of this case was interpreted subsequently to mean that the ship's liability for a "transitory" condition depends upon the length of time during which the defect created a dangerous condition. Crawford v. Pope & Talbot, Inc., 3 Cir., 1953, 206 F.2d 784. In Brabazon v. Belships Co., 3 Cir., 1953, 202 F.2d 904, the court drew a distinction between a duty to provide a seaworthy vessel and a duty to provide a safe place to work although this distinc-

328

tion would not seem to be compatible with views expressed by the Supreme Court. In the case at bar, the illness of the plaintiff was not proximately caused by failure of proper ventilation on board.

The decisions make it clear that unseaworthiness does not arise from every defect in a vessel, its equipment and maintenance. Alaska S.S. Co. v. Petterson, 1954, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798. The Supreme Court has reiterated this standard in Boudoin v. Lykes Bros. S.S. Co., 1955, 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354, wherein it was noted that the Court has not overruled the long-settled doctrine that to be seaworthy a vessel need not be free from all cause of mishap. It is enough if it is reasonably fit. "The problem, as with many aspects of the law, is one of degree." 348 U.S. at page 340, 75 S.Ct. at page 385. Vide The Silvia, 1898, 171 U.S. 462, 19 S.Ct. 7, 43 S.Ct. 241; Jones v. Lykes Bros. S.S. Corp., 2 Cir., 1953, 204 F.2d 815; Keen v. Overseas Tankship Co., 2 Cir., 1952, 194 F.2d 515; Doucette v. Vincent, 1 Cir., 1952, 194 F.2d 834.

The plaintiff also seeks to establish unseaworthiness on the basis of being supplied with a defective tool. On the morning of June 8, 1953, while at sea, plaintiff and a fellow employee sought to open a stuck valve. As plaintiff was using a 36" Stillson wrench in this operation, the tool slipped and the end of the wrench struck him a blow in the stomach. He continued at his duties for the remainder of the day but reported that his sputum contained blood the following morning. Plaintiff became nauseated and vomited. He attributed these symptoms to the blow from the wrench which he claims was old, rusted, and defective. Significantly, no report of this incident was made to any officer aboard ship, nor is there reference to it in the history which plaintiff gave to the hospital a month later. Plaintiff testified in his deposition that he did not inspect the wrench either before or after the incident. He did not ask for any substitute tool.

Defendant produced in court the two 36" Stillson wrenches that were on board the vessel in June, 1953. Upon examination the tools appeared to be in good condition, despite three years' use since the date of the alleged injury. This fact, in addition to testimony of defendant's witnesses, lead to the conclusion that plaintiff was not injured by any defect or insufficiency due to defendant's negligence in its appliances. Under the Jones Act the duty of the employer is to furnish reasonably safe and suitable simple tools. Jacob v. New York City, 1942, 315 U.S. 752, 758, 62 S.Ct. 854, 86 L.Ed. 1166. The court does not find it necessary to discuss the application of the simple-tool doctrine. Not only do the decisions reflect a contrariety of opinion in its scope and application, but the Supreme Court has suggested that it should not apply to cases arising under the Jones Act, Id., 315 U.S. at pages 756, 757, 62 S.Ct. 854.

In the second cause of action plaintiff seeks to recover for maintenance and cure. Specifically, plaintiff alleges that defendant was negligent in that the medical treatment accorded him after he fell ill during the voyage aggravated his condition. In addition, plaintiff asserts that defendant failed to fulfill its duty in this regard upon the discharge of plaintiff at the port of destination. As previously noted, plaintiff reported to the Purser that he had been gassed by fumes inhaled during the ballasting operation. Plaintiff was administered epsom salts and milk of magnesia. The court is not convinced that there was an erroneous diagnosis, neglect or improper treatment. Testimony of plaintiff's medical witness, Dr. Janowitz, established that the treatment prescribed was proper in cases where the patient reported poisons in his system from inhaling noxious fumes. This opinion was affirmed by Dr. York, a physician offered by the defendant. The ship's log reveals that initially plaintiff refused the offer to be put in the ship's hospital. The law imposes an obligation to give reasonable medical treatment to an injured or ill seaman, and the

vessel will not be held responsible for an error of judgment on the part of officers, if their judgment is conscientiously exercised with reference to existing conditions. The Van Der Duyn, 2 Cir., 1919, 261 F. 887. A ship's officer is not to be held to the same standard of skill as a professional medical man in matters of diagnosis and cure. Barlow v. Pan Atlantic S.S. Corp., 2 Cir., 1939, 101 F.2d 697.

The only problem that affords the court any difficulty in this case is the manner of plaintiff's dismissal and his conduct thereafter at the port of destination, Harbor Island, Texas. That plaintiff was in need of medical attention when he was discharged was recognized by the defendant when it provided him with a marine ticket of admission to a United States Public Health Service Hospital. There is no doubt in the mind of the court that plaintiff was injured in his service of the vessel, albeit from his own negligence, even though he failed to report the occurrence to his superior officers. He also suffered an attack of gastritis and finished the voyage laid up in the ship's hospital. Upon leaving the vessel, plaintiff was informed by a fellow crewman that a hospital facility at the nearest city, Corpus Christi, was closed on that day, a Saturday. The nearest Government marine hospital was at Galveston, Texas, a considerable distance away.

There is nothing in the evidence as to the means by which he was expected to get there. Plaintiff boarded a bus in Corpus Christi and journeyed to Staten Island, New York, after a stop-over at the home of his sister in Norfolk, Virginia. The only medication he received on the journey was provided him at his sister's home. Plaintiff received outpatient care at the Staten Island marine hospital from June 19–26, 1953. He was confined to the hospital from July 13–31, 1953, on which latter date he was discharged as fit for immediate duty.

Defendant resists the claim for maintenance and cure on the ground that plaintiff's illness on board the "Fort Mims" was caused solely by his own willful misconduct in overindulging in liquor in violation of the rules of the ship.

It would serve no useful purpose to review the numerous cases covering the right to maintenance and cure on the part of a seaman, for in reviewing the factual circumstances in themselves there is a wide diversity of opinion with respect to interpreting them in the light of the general rule. That rule is that in the absence of "gross act of indiscretion" and "wilful misconduct" recovery should be allowed. The Berwindglen, 1 Cir., 1937, 88 F.2d 125; Barlow v. Pan Atlantic S.S. Corp., supra. The duty of the master to provide maintenance and cure to a seaman injured or falling ill in service is one imposed by law, Cortes v. Baltimore Insular Line, 1932, 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368, and this duty "does not rest upon negligence or culpability on the part of the owner or master." Calmar S.S. Corp v. Taylor, 1938, 303 U.S. 525, 58 S.Ct. 651, 653, 82 L.Ed. 993; Aguilar v. Standard Oil Co., 1943, 318 U.S. 724, 730, 63 S.Ct. 930, 87 L.Ed. 1107; The Mars, 3 Cir., 1907, 149 F. 729. Nor is it restricted to those cases where the seaman's employment is the cause of the injury or illness. The Bouker, No. 2, 2 Cir., 1917, 241 F. 831, certiorari denied 1918, 245 U.S. 647, 38 S.Ct. 9, 62 L.Ed. 529; Aguilar v. Standard Oil Co., supra. And if the injury or illness outlasts the voyage, the right to maintenance and cure continues for a reasonable time thereafter, depending on the particular circumstances of each case. Calmar S.S. Corp. v. Taylor, supra; Loverich v. Warner Co., D.C.E.D. Pa.1941, 36 F.Supp. 943, remanded with directions to enter judgment for libellant, 3 Cir., 1941, 118 F.2d 690.

In the case at bar, there was no gross misconduct or insubordination which would work a forfeiture of the seaman's right to maintenance and cure. The Supreme Court has given the instruction that in applying the maintenance and cure rule, seamen, as wards of admiralty, should be beneficiaries of a liberal attitude in consonance "with the dictates

of sound maritime policy." Aguilar v. Standard Oil Co., supra, note 15, 318 U.S. at page 732, 63 S.Ct. at page 935, 87 L.Ed. 1107. And although decisions hold that an offer of hospital services is a fulfillment of the shipowner's obligation to furnish maintenance and cure, The Bouker No. 2, supra; United States v. Loyola, 9 Cir., 1947, 161 F.2d 126; June v. Pan American Petroleum & Transport Co., 5 Cir., 1928, 25 F.2d 457, the views of Judge Goodrich in Murphy v. American Barge Line Co., 3 Cir., 1948, 169 F.2d 61, 64, bear repeating:

> "If hospitalization was the way in which the obligation of maintenance and cure was to be fulfilled, this would mean, we think, that there was a duty to provide means to get the man there. He was no longer an employee of the respondent, it is true, but the duty of maintenance and cure did not stop with his discharge. Loverich v. Warner Co., 3 Cir., 1941, 118 F.2d 690, certiorari denied 1941, 313 U.S. 577, 61 S.Ct. 1104, 85 L.Ed. 1535. A hospital ticket without more under these circumstances does not discharge the obligation * * *."

While the actions of plaintiff in deciding to travel from Texas to Staten Island for hospitalization may warrant the conclusion that he erred in judgment, I do not consider them to be of such nature as to warrant a forfeiture of his right to maintenance and cure. Cf. Gardner v. Sinclair Refining Co., D.C.E.D.Pa.1955, 129 F.Supp. 225, affirmed 3 Cir., 1955, 227 F.2d 958. The hospital records indicate out-patient care was rendered plaintiff from June 19 to June 26, 1953, inclusive. Accordingly, he is entitled to maintenance and cure for that period at the rate of $8 a day. He is also entitled to reimbursement for transportation to Staten Island which was claimed to amount to $49.

An order may be submitted in conformity with the findings and conclusions herein expressed.