Constantine MACRIS, Plaintiff-Appellant,

v.

SOCIEDAD MARITIMA SAN NICOLAS, S.A. and Petmar Agencies, Inc., Defendants-Appellees.

No. 258, Docket 24058.

United States Court of Appeals Second Circuit.

Argued March 12, 13, 1957.

Decided June 17, 1957.

Jacob Rassner, New York City (Harvey Goldstein, of counsel), for plaintiff-appellant.

Renato C. Giallorenzi, New York City, for defendants-appellees.

Before HINCKS, STEWART and LUMBARD, Circuit Judges.

STEWART, Circuit Judge.

Constantine Macris was originally hired as second mate of the S.S. Euryviades in November, 1951, at Piraeus in

his native Greece. Two months later, when the vessel was being moored at Bremen, Germany, he "felt a pain" while engaged with other members of the crew in hauling in a line. The ship's captain sent him to a physician in Bremen, who informed him that he had a hernia and advised him to see a doctor at the next port.

From Bremen the vessel sailed to Santos, Brazil, where Macris was examined by a physician and provided with a truss. The ship then proceeded via Trinidad to Baltimore, Maryland, arriving there in April, 1952. At Baltimore Macris was again examined, this time both by a private physician and at a United States Public Health Service Hospital. He was found "fit for light work not involving heavy lifting," but an operation was recommended. He signed off the vessel, and arrangements were made for his transportation on a passenger ship scheduled to leave eighteen days later for Greece, where the operation could be performed.

Macris changed his mind, however, because he did not want to be detained at Ellis Island while awaiting passage home. He signed back on as second mate of the Euryviades on April 7, 1952. From Baltimore the ship sailed to Korea, returning to California in the summer of 1952. In California Macris again signed off the vessel for the purpose of having an operation. He traveled to New York at his employer's expense, and underwent two operations at a hospital there in August of 1952. Afterwards Macris suffered physical impairment, allegedly caused by the administration of an anaesthetic in the course of the second operation. He remained in an out-patient status, but failed to return for further treatment after January 5, 1953, although directed to do so.

Macris' cause of action for negligence and unseaworthiness was based upon a clear cut and narrowly defined theory. The complaint was silent as to what had transpired before Macris decided to resume his employment in Baltimore. It alleged that he "signed articles" as second mate there on April 7, 1952. Recov-

ery was sought upon the ground that his impaired physical condition at the time of his employment in Baltimore had been aggravated by the defendants' negligence and by the unseaworthiness of their vessel during the ensuing three month period. The claim was that this aggravation made necessary two operations instead of one and thereby caused his subsequent disability.

After a five day trial the district judge found that this cause of action had not been proved. The court found as a matter of fact that Macris' condition had not deteriorated during the period between April 7, 1952, when he signed the articles in Baltimore, and July 7, 1952, when he left the ship in California.

■ It is not contended here that the district court was in error in finding that the essential allegations of the complaint were not proved. The contention is rather that the trial court erroneously denied the plaintiff's motion to amend his complaint to conform to the proof under Rule 15(b), Fed.Rules of Civil Procedure, 28 U.S.C.A.

At the trial the history of what had occurred from the time Macris was originally employed in Greece was received in evidence, despite the narrow scope of the complaint. Defense counsel repeatedly objected to the admission of any evidence of events prior to Macris' reemployment in Baltimore, and the evidence was admitted by the trial judge only for the limited purpose of showing "the course of dealings between the parties before the hiring" at Baltimore.

At the close of the plaintiff's case, his counsel made a perfunctory motion "to amend the pleadings to conform to the proof," but failed to point out any variance between the evidence and the pleadings, or any change in the theory of the plaintiff's cause of action. When the trial judge inquired as to the reason for the motion, counsel replied, "Frankly, I don't see any actual need at the moment." The court denied the motion with leave to renew it at a later time. The motion was not renewed until after the court

had announced an adverse decision. Only then did counsel indicate that he desired to broaden his pleadings to assert the defendants' liability for the original hernia in Bremen and for its aggravation during the voyage from Bremen to Baltimore.

The court denied the motion upon the ground that no such issues had been tried by the express or implied consent of the parties, pointing out that "proof had not been taken as to the claim attempted to be added to the complaint" except "upon the issue of defendants' duty subsequent to reemployment in Baltimore," and that the defendants had objected to its receipt for any purpose. The court pointed out that plaintiff's counsel had had ample opportunity to familiarize himself with the facts of the case and had deliberately chosen the theory on which he intended to proceed. The court emphasized that plaintiff's counsel had "badgered" his opponent with the possibility of such an amendment as part of a "war of nerves," but had refrained from asking to amend until the case had been lost on the plaintiff's original theory.

Under the circumstances disclosed by the record, the trial court was clearly within its discretion in denying the motion to amend. Simms v. Andrews, 10 Cir., 1941, 118 F.2d 803, 807; Wheeler v. West India S.S. Co., 2 Cir., 1953, 205 F.2d 354, certiorari denied 346 U.S. 889, 74 S.Ct. 141, 98 L.Ed. 393; United States v. City of Brookhaven, 5 Cir., 1943, 134 F.2d 442, 446 [1]

■ The denial of the motion to amend was not prejudicial in any event, however, for the simple reason that the evidence failed to show any breach of duty to Macris on the part of the defendants prior to the ship's arrival in Baltimore. There was no proof that unseaworthiness of the vessel or the defendants' negligence was a cause of Macris' original injury at Bremen. There was no proof that aggravation of his condition between Bremen and Baltimore was so caused. There was no proof of any negligent failure to provide Macris with medical treatment either before or after the vessel stopped at Baltimore, and there was affirmative evidence, and an affirmative finding that there had been no such failure.

The remaining issues merit little discussion.

■ The district court was not in error in awarding maintenance and cure only through January 5, 1953, because after that date Macris failed to return to the hospital for further treatment as directed. Generally a refusal by a seaman of proffered care and treatment discharges the obligation of maintenance and cure. Bailey v. City of New York, 2 Cir., 1946, 153 F.2d 427; The Saguache, 2 Cir., 1940, 112 F.2d 482. Exceptions to this rule exist, when reasonable grounds for refusing care are shown. Luth v. Palmer Shipping Corp., 3 Cir., 1954, 210 F.2d 224. But here the evidence was insufficient to remove the case from the operation of the general rule.

■ The contention that Macris was entitled to wages for the period after he left the Euryviades in California until the end of her voyage in Italy more than a year later is clearly without merit. His employment ended when he voluntarily signed off at Richmond, California, on July 7, 1952. He had no right to wages he would have earned had he continued aboard as second mate for another year. Siciliano v. California Sea Products Co., 9 Cir., 1930, 44 F.2d 784; Wahler v. Alaska S.S. Co., D.C.W.D.Wash.1950, 91 F.Supp. 261; Raymond v. Ella S. Thayer, D.C.N.D.Cal.1887, 40 F. 902.

The judgment is affirmed.

[1] "The purpose of an amendment to conform to proof is to bring the pleadings in line with the actual issues upon which the case was tried; therefore an amendment after judgment is not permissible which brings in some entirely extrinsic issue or changes the theory on which the case was actually tried, even though there is evidence in the record—introduced as relevant to some other issue—which would support the amendment. * * * " 3 Moore's Federal Practice 846–47.