UNITED FRUIT COMPANY, Appellant,

v.

William E. SUMRALL, Appellee.

No. 17910.

United States Court of Appeals
Fifth Circuit.

Jan. 21, 1960.

George W. Healy, III, New Orleans, La., Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., of counsel, for appellant.

George Smill, New Orleans, La., for appellee.

Before HUTCHESON, TUTTLE and BROWN, Circuit Judges.

HUTCHESON, Circuit Judge.

Plaintiff, a seaman, sued (1) for damages under the Jones Act, 46 U.S.C.A. § 688, and general maritime law, and (2) for maintenance and cure for disability, suffered while in the service of the Ship Cape Ann. The jury decided the damage action against him. The district judge decided the maintenance action in his favor, allowing 580 days from August 22, 1955, when defendant ceased payments, to March 26, 1957, when plaintiff reported for duty.

Defendant is here insisting that the court erred: (1) in finding and concluding that plaintiff suffered disability while in the service of the ship, entitling him to maintenance and cure; (2) in finding and concluding that his conduct, in failing and refusing United States Public Health Service treatment, did not relieve defendant of any further duty of maintenance; and (3) in any event, in not holding that he was not entitled to maintenance between August 22, 1955, and the time of Dr. Hannon's operation in March of 1956.

In support of the first of these defenses, appellant points to plaintiff's testimony: that he did not become ill on the voyage and that his disability resulted entirely from being struck by an

736

improperly secured door and to the fact that the jury found against him in his action for damages based on this claim.

In support of the second defense, appellant relies on the testimony of plaintiff, summarized in the margin.[1]

In support of the third defense, it relies on the testimony showing that the operation performed and treatment afforded plaintiff by Patton did not help his condition and perhaps worsened it.

▆▆▆ We cannot agree with appellant on its first claim, that the finding of the district judge, that plaintiff received a disability in the service of the ship, was clearly erroneous. Cf. Ahmed v. United States, 2 Cir., 177 F.2d 898. The finding of the jury was without effect on the judge's finding on this issue, and there is evidence supporting it, including the undisputed fact that maintenance was actually paid.

[3–5] We agree, however, with appellant that the evidence demands a finding: that plaintiff did fail and refuse to continue accepting Public Health Service treatment; that, indeed, he deliberately rejected it. We cannot, however, agree that this conduct which, but for appellant's out patient status,[2] would have completely deprived him of all claim to maintenance, did do so. Cf. Norris, "The Law of Seaman", Vol. 2. Secs. 591, 592, and 593, pp. 221–225, and cases cited in notes thereto. See also Macris v. Sociedad, 2 Cir., 245 F.2d 708; and Meyer v. United States, 2 Cir., 112 F.2d 482. We are, though, of the opinion that this conduct, under the circumstances testified to, which were not,

1. "Q. After August of '55 did you stop going to the Marine Hospital? A. Yes, sir.

"Q. Why did you stop going? A. Because I couldn't get anything done that would do me any good and the consulting surgeon said that he would do whatever they would let him do and it looked like it would have to be surgery.

*    *    *    *    *

"Q. Did you go back to the Marine Hospital before your operation? A. Yes, sir, I went back and talked to this Doctor Sonneland.

"Q. What did Doctor Sonneland say to you? A. I told him that I was going to the Mobile Infirmary under Doctor Patton for an operation and he said, 'Well, I want you to come back and let me treat you for two or three more weeks before you do or I'll see that you don't get any more maintenance.'

"The Court: Do you want us to understand that the doctor told you that?

"Witness: He most certainly did.

"The Court: He insisted that you come back and if you didn't he'd see that you wouldn't get any more maintenance?

"The Witness: That's right.

*    *    *    *    *

"Q. Now who is Doctor Sonneland? A. Assistant Surgeon.

"Q. At this time did he have anything to do with the outpatient clinic from an administrative standpoint, do you know? A. He was acting in the place of Doctor Haynes who was out of town for 30 days. Doctor Haynes was the senior surgeon in charge.

"Q. And what did Doctor Sonneland tell you? A. He told me that if I didn't let him treat me for two or three more weeks that he would see that I didn't receive anymore maintenance.

"Q. And then what happened? A. Well, I just walked out.

*    *    *    *    *

"Q. Mr. Sumrall, you said that Doctor Sonneland told you that he didn't want you to have the operation and that if you did have it he was going to see to it that your maintenance was taken away from you, is that correct? A. He didn't say that he didn't want me to have the operation. He said he wanted to treat me for two or three more weeks with conservation treatment, which I had for five or six months and it didn't do any good. I was getting worse.

"The Court: That meant without an operation, didn't it, for two or three weeks at least?

"The Witness: Well, that's what he meant, yes, sir.

"By Mr. Healy:

"Q. You'd told him before that you had planned to see Dr. Patton for an operation, didn't you? That's what you testified. A. No, that's when he told me that. I told him—when I told him I was going to Doctor Patton for an operation he told me that he wanted to treat me for two or three more weeks."

2. Cf. Ahmed v. United States, supra; Sawyer v. California Tanker Co., D.C., 147 F.Supp. 324.

but should have been, taken into consideration by the district judge in determining the maintenance to be allowed, should be taken into consideration here to the extent contended for by appellant in its third ground, with the result that the judgment is modified by disallowing the maintenance for the period from August, 1955, to March, 1956, and, as modified, is affirmed, with costs of appeal divided.

Because the nature and extent of the obligation of maintenance and cure have been so fully discussed in the many cases cited in the excellent brief of appellant and in Norris, supra, including particularly the leading cases from the Supreme Court: Calmar Steamship Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993; Johnson v. United States, 333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468, and Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850; and from the courts of appeals: Dobbs v. Lykes Bros., 5 Cir., 243 F.2d 55, a case from this court, and Ahmed v. United States, 177 F.2d 898 and Macris v. Sociedad, supra, from the Second Circuit, and of the extensive treatment of the whole subject of Maintenance and Cure in Norris, "The Law of Seamen". Vol. 2, Chapter 26, pp. 123 to 239, it will be sufficient, without ourselves undertaking to further labor the matter here, to refer to the law as it is set down in these authorities.[3]

The judgment is modified and affirmed.

JOHN R. BROWN, Circuit Judge (concurring specially).

I concur in the Court's opinion as to the appellant's contentions No. (1) and (2) and in the result concerning No. (3). This is not to disagree with the Court's opinion as to (3). Indeed, drawing upon the same eminent authorities—to which I agree with the Court no real contribution can be made—I simply wish the grounds of my concurrence in the opinion to be made clear.

Availability of the facilities of the Marine Hospital does not determine the extent of *time* for which maintenance is due. The seaman cannot recover from the shipowner the cost of that which would have been furnished him free of cost. Hence, he may not recover surgical, medical and hospital fees and expenses if he unreasonably declines Marine Hospital treatment. But the Public Health Service has no special standing to determine the medico-legal question of the time at which the seaman's condition has become static—the classic statement of the duration of the right. And if the outpatient treatment was required in the course of achieving maximum recovery beyond which medical science would not normally go, the seaman is entitled to the cost of his keep, i. e., "maintenance" during the period of that "cure." He does not forfeit that right based upon such medical facts because he has left the Marine Hospital, for good or bad reason, or has declined treatment by it. Nor need he establish that the Marine Hospital treatment was inadequate or the staff incompetent. He must, of course, establish the medical fact that the treatment furnished by private physicians and facilities was reasonably required to achieve the static condition. He runs the risk, of course, that the trier of fact, whether Judge or jury, will accept the opinion and conclusions of the Public Health Service, supposedly disinterested, over the contrary views of the private physician. And he may not saddle onto the shipowner any part of the expenses paid to such private facilities which would have been furnished free of cost by the Marine Hospital. But the medical opinion of the Public Health Service is neither the determinant, nor prima facie, the determinant. Nor does it become so by operation of a "forfeiture"—a consequence which would, I add as a sort of personal footnote, be quite out of character with the tender solicitude lavished by the Admiralty on its favored, if not too much favored, wards.

3. Cf. Enochasson v. Freeport Sulphur, D.C., 7 F.2d 674, where the principles allowing recovery of wages, maintenance and cure are discussed.