**Ralph B. BURKE, Libelant,**

v.

**PACIFIC TOWBOAT & SALVAGE CO., Respondent.**

**No. 62–18.**

United States District Court
S. D. California,
Central Division.

June 29, 1962.

Allan F. Bullard, San Pedro, Cal., for libelant.

Robert Sikes, Los Angeles, Cal., for respondent.

WESTOVER, District Judge.

Libelant filed a libel in personam for wages and for maintenance and cure, alleging that while employed on respondent's vessel, "E. A. JUDD", a sea-going tug, he sustained an injury described as an inguinal hernia. The facts of the case are not in dispute; and it has been stipulated that maintenance is to be computed at the rate of $8.00 per day.

It appears libelant was employed as a cook on respondent's tug. Prior thereto he had served as cook on other vessels and in 1958, in connection with a pre-employment medical examination by Grace Lines, had been informed that he had a potential hernia.

Libelant testified that while working on the "E. A. JUDD", immediately prior to April 25, 1961, he had a coughing spasm and experienced a little bit of burning sensation and pain in the left groin; that when the voyage was completed he was paid all of his wages, with the exception of $7.83 earned on board the tug after it had docked to be laid up for repairs.

Several days thereafter libelant took his son to a doctor and while in the doctor's office told the doctor about the burning sensation in the left groin. The doctor made an examination of libelant and suggested he obtain medical treatment. Libelant went to the Public Health hospital in San Francisco where he was operated on for hernia, which operation was normal in every respect and from which he made a normal recovery. However, while confined in the hospital, as part of the routine post-operative care he was catheterized, and a urinary infection thereafter developed which caused protracted disability. As a consequence, libelant did not receive a "fit for duty" slip until December 31, 1961.

Had it not been for the urinary infection, libelant's claim against respondent would have been nominal; but because of the infection, libelant claims wages and maintenance and cure until the date of his certification as fit for duty.

■ The first issue to be determined is whether libelant was injured in service of the vessel.

Respondent contends there was no work on board the vessel which caused the hernia or aggravated the condition and that libelant was under no strain. However, it is libelant's contention that if a seaman is disabled while in service of a maritime employer, he is entitled to maintenance and cure and all a libelant is required to show is that he became disabled while employed. [Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88.]

There is no question but that libelant knew prior to becoming an employee of respondent that he had an incipient hernia; also that he had worked for a period of years without discomfort after being informed of the condition. The only evidence in the record that libelant was "injured" while employed by re-

spondent is that he suffered a coughing spell and thereafter experienced a burning sensation and pain in the left groin. It was not until libelant took his son to the doctor that he became aware he did in fact have a hernia. For libelant to recover, the Court must find he became sick or injured in the service of the vessel.

The evidence in the case discloses there was a small sum due libelant when he left the tug, arising out of work performed in cleaning up at the completion of the voyage, which sum had not been paid to him. Libelant testified he inquired about the money earned in cleaning up the galley at the end of the voyage and was informed the amount "would be carried over to the next trip." Libelant also testified he had not signed any articles on the vessel and was to receive wages only when the tug was in service; that it was his understanding when he left the tug that it was to be laid up for repairs. While libelant was under treatment the tug was reconditioned and, because libelant was not available, put to sea without him as cook.

█ From the hospital records it appears libelant was hospitalized from May 17 to June 2; from July 24 to August 11, and from November 14 to December 4—a total of fifty-one (51) days. Libelant cannot recover maintenance while an in-patient at the hospital. Calmar S. S. Corp. v. Taylor, 303 U.S. 525 at 531, 58 S.Ct. 651 at 654, 655, 82 L.Ed. 993.

█ The Court is of the opinion there is sufficient evidence to sustain a finding that the injury of which libelant complains was sustained in the service of the vessel. However, respondent contends it should not be penalized for maintenance because of the urinary infection which occurred in the hospital.

A case somewhat similar is Gardner v. Sinclair Refining Company, D.C., 129 F. Supp. 225, in which the libelant suffered a sharp pain in the left side of his groin while engaged in removing a container of ice from the ice machine on board the vessel. Subsequently, a hernioplasty on the left side was performed, and while libelant was in the hospital the incision became infected. The libelant was discharged from the hospital, and within a short time thereafter the infection again set in and persisted for several months. He returned to the Public Health Service Hospital in Baltimore and was discharged therefrom on December 10, 1953—six months after the initial operation.

In that case the Court found the libelant did sustain a hernia in the service of the vessel and was not fit for duty until December 10, 1953 and, as a consequence, allowed maintenance until his final discharge as fit for duty on December 10, 1953.

█ In the action at bar it appears from the testimony that during the time libelant claims maintenance he obtained outside employment. In Vaughan v. Atkinson, 4 Cir., 291 F.2d 813 at page 818, Judge Sobeloff (in a dissenting opinion) stated:

"* * * The correct rule, I think, is to treat earnings during convalescence as wholly irrelevant, since Vaughan's right to maintenance and cure has been established in accordance with the governing Supreme Court decisions. * * * Here the earnings during convalescence should be treated as having no more relation to the right to maintenance and cure than the relief payments received by the seaman in another Second Circuit case, Evans v. Schneider Transportation Company, 2 Cir., 1957, 250 F.2d 710, (Citations). * * * Maintenance is not designed to restore lost earnings, and the right to maintenance should be unaffected by incidental earnings ashore while the sailor is a patient under treatment and unfit to do seaman's work."

On May 14, 1962, in Case No. 323, the Supreme Court sustained Judge Sobeloff's dissent opinion, holding that a seaman's claim to maintenance should not be offset by earnings during convalescence.

The Court finds libelant's employment ceased on April 25, 1961 when he left the tug. No notice was given him at that time to return to work as the tug was scheduled for repairs. He was paid in full for the completed voyage and, after the tug docked, cleaned up the galley. In doing so he earned $7.83 which is still due. Libelant should be paid maintenance at the rate of $8.00 per day for 177 days—a total of $1,416.00.

Judgment will be rendered in favor of libelant for the sum of $7.83 earned wages and $1,416.00 maintenance. Findings of Fact, Conclusions of Law and Judgment are to be prepared by counsel pursuant to the foregoing, for presentation for signature in accordance with the rule.