Glynn J. PELOTTO, Plaintiff-Appellant,

v.

L & N TOWING COMPANY et al.,
Defendants-Appellees.

No. 79–1098
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Oct. 12, 1979.

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Darryl J. Tschirn, John M. Robin, Covington, La., for plaintiff-appellant.

Francis Emmett, Randolph J. Waits, New Orleans, La., for defendants-appellees.

Before BROWN, Chief Judge, KRAVITCH and JOHNSON, Circuit Judges.

JOHN R. BROWN, Chief Judge:

A seaman's right to maintenance and cure may sometimes require the filing of successive suits, and so it has been said that: "[t]hus the seaman is to keep biting at his cherry."[1] That principle and several others are at issue in this admiralty suit. The able District Judge granted defendants' motion for summary judgment, dismissing plaintiff's action for maintenance and cure. After a climb amongst several branches of admiralty and summary judgment procedure, we conditionally agree with the District Judge's expression of legal principles as to the claim for cure, but find it necessary to reverse and remand for further determinations. As to maintenance, we find that summary judgment was improperly granted, and reverse and remand as to that claim also.

### The First Nibble

The present controversy is rooted in the events of October 13, 1972. Plaintiff, Glynn Pelotto, was a seaman employed on the tugboat M/V CHET G. While aboard that day, he severely injured his knee. Those events "bore fruit" a year and a half later, when Pelotto filed a complaint against his employers, defendants L&N Towing Co., Eveline Towing, Inc., and Larry Towing, Inc.[2] That action initially sought damages under the Jones Act and under the general maritime doctrine of unseaworthiness. Subsequently, however, but without amending his complaint, Pelotto filed a motion for partial summary judgment, asserting seaman's status and claiming the additional right to maintenance and cure. The motion was never heard, how-

---

1. G. Robinson, Admiralty 299 (West 1939).

2. *Pelotto v. L&N Towing Co.*, Civ. Action No. 74–943 (E.D.La., filed April 5, 1974).

ever, since on September 3, 1974, the parties reached an agreement concerning the maintenance and cure claims.

That agreement [3] contains several provisions. First, defendants agreed to pay all of the maintenance claimed and cost of cure incurred by Pelotto up until the date of the agreement. Beyond that date, defendants agreed to "recommend the continuance of maintenance payments upon [defendants' insurer] being furnished with appropriate medical reports." The parties dispute the precise nature of the provision for further cure payments, though the provision itself states that the issue would be "temporarily resolved by an agreement that any further operations or treatment by private physicians will be done at plaintiff's expense, *reserving to him the right to claim for reimbursement on trial.*" (Emphasis supplied).[4] It is undisputed, however, that the letter agreement of September 3, 1974, tendered to Pelotto further cure services free of charge, as provided at the United States

Public Health Service Hospital in New Orleans, and that the tender was rejected.[5]

Fifteen months later, the Jones Act and unseaworthiness claims came to trial.[6] As of that time, Pelotto had received the maintenance and cure payments due under the September agreement. In addition, Pelotto was paid maintenance throughout the September 1974 to December 1975 interim. On December 10, 1975, Pelotto was awarded a judgment of $75,000. Shortly thereafter, on December 15, Pelotto's interim maintenance payments came to an abrupt halt.

### The Second Bite

The present action is the second bite. This action was brought on July 26, 1976, six months after the entry of the Jones Act and unseaworthiness judgment, and the cessation of maintenance payments. Pelotto first alleges that the defendants arbitrarily and capriciously refused to continue maintenance payments beyond December 15,

---

**3.** Mr. Darryl J. Tschirn
Attorney at Law
3231 I-Ten Frontage Road
Metairie, Louisiana 70002

 Re: Glynn J. Pelotto -v-
 L & N Towing Company, et al
 C. A. No. 74-943-G
 <u>Our File 16,083</u>

Dear Darryl:

This confirms our conversation concerning the maintenance and cure problem in the captioned case. It was agreed that we would recommend that maintenance be brought current and that the cure issue would be temporarily resolved by an agreement that any further operations or treatment by private physicians will be done at plaintiff's expense, reserving to him the right to claim for reimbursement on trial. Further, it was agreed that it is stipulated that further cure was tendered to plaintiff free of charge as of September 4, 1974, at the United States Public Health Service Hospital in New Orleans.

According to advices from United States P & I Agency, maintenance is due from September 21, 1973, with a credit for 28 days for hospitalization at the St. Charles Hospital between October 19 and October 26, 1972.

If you will sign and return a copy of this letter at the place indicated below to evidence your agreement, I will order a check payable to Mr. Pelotto for the payment of maintenance up to and including September 30, 1974, and / the continuance of maintenance payments upon United States P & I Agency's being furnished with appropriate medical reports.

 Very truly yours,

 TERRIBERRY, CARROLL, YANCEY & FARRELL

 By: *Francis Emmett*

FE/gm

AGREED:

DARRYL J. TSCHIRN
Attorney for Glynn J. Pelotto

---

**4.** It is a disputed issue of fact as to the precise meaning of these words of reservation.

**5.** Although his counsel (then and now) does not dispute his agreement, the deposition testimony by Pelotto reflects some question as to whether he was aware of the tender and rejection of cure. For summary judgment purposes this testimony might, under some circumstances, cast doubt on the validity of the stipulation. *Cf. Aguilez-Nunez v. Carnival Cruise Lines, Inc.*, 5 Cir., 1978, 584 F.2d 76 (improper to grant summary judgment when validity of seaman's release at issue); *Cates v. United States*, 5 Cir., 1971, 451 F.2d 411, 414–16.

However, that contention was not raised by the plaintiff at either the trial court proceedings or on appeal. Moreover, Pelotto's interrogatory answers and his brief on appeal admit that he received a tender of free cure and rejected it as of September 3, 1974. Hence it is undisputed that the stipulation of tender was received and presumably rejected by Pelotto.

**6.** It is undisputed that no maintenance or cure claims as such were presented at trial. Although the parties introduced medical testimony at that trial which *might* have indicated that Pelotto's knee was incapable of further improvement, the defendants have failed to clearly establish that the testimony indicated such a condition.

1975. Second, he alleges that defendants have arbitrarily and capriciously refused to allow him to receive care from private physicians at defendants' expense. Since Pelotto admitted that he has yet to receive any treatment from a private (or public) physician, the cure claim must be viewed as a claim for damages due to the defendants' failure to agree to provide cure.

Based upon the above facts, the District Judge, as to each of the claims, granted defendants' motion for summary judgment on two grounds: (i) that the claims were barred by *res judicata* and collateral estoppel, and (ii) that Pelotto improperly rejected an offer of free cure and thereby lost his right to receive maintenance and cure from the defendants.

In this appeal, Pelotto asserts that the District Judge erred in several respects. First, he argues that the failure to claim maintenance and cure damages in his original action does not estop such claims in the present action. Second, Pelotto argues that maintenance and cure are due so long as further treatment will effect an improvement in the condition of his knee. That determination, he argues, is a disputed factual question which precludes the use of summary judgment. Third, Pelotto asserts that he has adequately disputed the competency of or adequacy of treatment afforded by the United States Public Health Service Hospital thus creating a factual question concerning the effect of his rejection of that hospital's facilities.

 Maintenance and cure are centuries old remedies under the general maritime law. A seaman's right to maintenance and cure is implicit in the contractual relationship between the seaman and his employer, and is designed to ensure the recovery of these individuals upon injury or sickness sustained in the service of the ship. *Calmar S.S. Corp. v. Taylor*, 1938, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993, 1938 A.M.C. 341; *Harden v. Gordon*, C.C.D.Me., 1823, 11 Fed.Cas. 480, Cas. 6,047; 1B R. Benedict, Admiralty § 48 (6th ed. 1976); 1 M. Norris, The Law of Seaman §§ 536–39, 545 (2d ed. 1962). Maintenance and cure are due with-

out regard to the negligence of the employer or the unseaworthiness of the ship. *Aguilar v. Standard Oil of New Jersey*, 1943, 318 U.S. 724, 730, 63 S.Ct. 930, 933, 87 L.Ed. 1107, 1112–13, 1943 A.M.C. 451, 456–57; *Calmar S.S. Corp. v. Taylor, supra.* Maintenance is a *per diem* living allowance, paid so long as the seaman is outside the hospital and has not reached the point of "maximum cure." Cure involves the payment of therapeutic, medical, and hospital expenses not otherwise furnished to the seaman, again, until the point of "maximum cure." *Farrell v. United States*, 1949, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850, 1949 A.M.C. 613; *Myles v. Quinn Menhaden Fisheries, Inc.*, 5 Cir., 1962, 302 F.2d 146, 150, 1962 A.M.C. 1626, 1629–31.

 Plotting the point of "maximum cure" is a troublesome task both factually and as a matter of law. The accepted legal standard holds that maximum cure is achieved when it appears probable that further treatment will result in no *betterment* of the seaman's condition. *Farrell v. United States, supra; Brown v. Aggie & Millie, Inc.*, 5 Cir., 1973, 485 F.2d 1293, 1973 A.M.C. 2465; *Myles v. Quinn Menhaden Fisheries, Inc., supra.* Thus, where it appears that the seaman's condition is incurable, or that future treatment will merely relieve pain and suffering but not otherwise improve the seaman's physical condition, it is proper to declare that the point of maximum cure has been achieved. *Stewart v. Waterman S.S. Corp.*, E.D.La., 1968, 288 F.Supp. 629, aff'd, 5 Cir., 1969, 409 F.2d 1045, 1969 A.M.C. 1648, *cert. denied*, 1970, 397 U.S. 1011, 90 S.Ct. 1239, 25 L.Ed.2d 423; H. Baer, Admiralty Law of the Supreme Court § 1–2, at 6–10 (3d ed. 1979).

 In dismissing the present action for maintenance and cure, the trial judge seemed overly preoccupied with the failure of Pelotto to litigate his maintenance and cure claims—and in particular the issue of whether maximum cure had been attained—at the trial of his initial Jones Act and unseaworthiness suit. It is certainly true that a seaman *may* join his maintenance and cure claims with those under the

Jones Act and unseaworthiness.[7] Further, the medical testimony at such consolidated proceedings may well constitute a declaration that maximum cure has been reached, where that testimony is directed towards the issue of maximum cure.[8] Moreover, it is true that the doctrines of *res judicata* and collateral estoppel apply to admiralty proceedings.[9]

In applying the doctrines of *res judicata* and collateral estoppel to this suit for maintenance and cure, however, the District Judge failed to account for the peculiar nature of the maintenance and cure remedies. First, maintenance and cure for the future are ordinarily not awarded in a lump sum. The award may "cover future maintenance and cure of a kind and for a period definitely ascertained or ascertainable . . . ." *Calmar S.S. Corp. v. Taylor, supra,* 303 U.S. at 530–31, 58 S.Ct. at 654. Since the defendants were satisfying all of Pelotto's maintenance and cure claims as of the date of his initial trial, Pelotto's only possible maintenance and cure claims at

that time would have been either: (i) an action for definitely ascertainable *future* maintenance and cure—an action which defendants do not claim was possible; or (ii) an action asking for a declaration that payments be made until Pelotto reached maximum cure—an action of very doubtful utility to Pelotto. *See Lirette v. K&B Boat Rentals, Inc.,* 5 Cir., 1978, 579 F.2d 968, 970. Thus *res judicata* does not preclude the present action.

The rule of *res judicata* (and collateral estoppel), recognizable in admiralty,[10] is subject to the substantive limitation that seamen have always been accorded the right to bring serial suits to collect maintenance payments as they come due. *Farrell v. United States, supra,* 336 U.S. at 519, 69 S.Ct. 707; *Calmar S.S. Corp. v. Taylor, supra,* 303 U.S. at 530–31, 58 S.Ct. 651; 1 M. Norris, *supra,* § 564, at 637 & n.19 ("Because of the continuing nature of the shipowner's obligation to furnish maintenance and cure a previous award cannot be regarded as res judicata.").[11] Hence, even

---

7. In *Fitzgerald v. United States Lines Co.,* 1963, 374 U.S. 16, 18–19, 83 S.Ct. 1646, 1649, 10 L.Ed.2d 720, 723, 1963 A.M.C. 1093, 1095, the Supreme Court stated:

> Although remedies for negligence, unseaworthiness, and maintenance and cure have different origins and may on occasion call for application of slightly different principles and procedures, they nevertheless, when based on one unitary set of circumstances, serve the same purpose of indemnifying a seaman for damages caused by injury, depend in large part upon the same evidence, and involve some identical elements of recovery. Requiring a seaman to split up his lawsuit, submitting part of it to a jury and part to a judge, unduly complicates and confuses a trial, creates difficulties in applying doctrines of *res judicata* and collateral estoppel and can easily result in too much or too little recovery.[6]

In footnote 6, the Court continued: "This Court has held that recovery of maintenance and cure does not bar a subsequent action under the Jones Act, . . . but of course, where such closely related claims are submitted to different triers of fact, questions of *res judicata* and collateral estoppel necessarily arise . . . ." *Id.* at 19, n.6, 83 S.Ct. at 1649 n.6. *See generally* G. Gilmore & C. Black, The Law of Admiralty 293, 295 (2d ed. 1975) (discussing propriety of joining related claims).

8. *Vella v. Ford Motor Co.,* 1975, 421 U.S. 1, 95 S.Ct. 1381, 43 L.Ed.2d 682, 1975 A.M.C. 563. As discussed, there may have been medical testimony in Pelotto's initial suit that indicated maximum cure had been achieved. *See* note 6, *supra.* That testimony was not directed toward maintenance and cure issues, however, and no one has pointed out, one way or the other, whether there was any finding, express or implied, as to maximum recovery by the court in that suit. *Cf.* H. Baer, *supra,* at §§ 1–2.1 & 1–2.2 (arguing that under some circumstances the lower court's finding of maximum cure may be relevant).

9. *Fitzgerald v. United States Lines Co., supra,* 374 U.S. at 19, 83 S.Ct. 1646; *Runyan v. Great Lakes Dredge & Dock Co.,* 6 Cir., 1944, 141 F.2d 396, 397, 1944 A.M.C. 614, 615–16. *Cf. Jenkins v. Roderick,* D.C.Mass., 1957, 156 F.Supp. 299, 304–06, 1957 A.M.C. 2325, 2332–36 (discussing problems inherent in splitting admiralty causes of action).

10. *See* footnote 9, *supra.*

11. In G. Gilmore & C. Black, *supra* at 300–01, the authors survey the case law and conclude:

> It follows that seamen may bring successive suits and that a prior recovery will not bar a subsequent action.

> \* \* \* \* \* \*

had Pelotto claimed maintenance and cure in his initial suit, there would still be no bar to recovery of maintenance and cure in this, the "subsequent" action.[12] Since an *actual* claim would not bar this action, neither can Pelotto's previous failure to make a claim bar this action.

▮▮▮ Similarly, collateral estoppel is no bar to Pelotto's suit. Not only may the obligation to furnish maintenance and cure continue after a Jones Act or unseaworthiness verdict, but the issues involved, despite some overlap, are always somewhat different.[13] The difference in the nature of the issues involved has long been recognized as permitting the maintenance and cure actions to be separately filed. *Pacific S.S. Co. v. Peterson*, 1928, 278 U.S. 130, 49 S.Ct. 75, 73 L.Ed. 220, 1928 A.M.C. 1932; *Jewell v. The Ohio River Co., supra;* 1 M. Norris, *supra,* §§ 543 & 555. To paraphrase Robinson, it is altogether clear that Pelotto cannot, at least as a matter of law, be denied this bite at "his cherry." [14]

### The Pit Of The Matter

The District Judge was more nearly correct in his second, alternative ground for dismissing this lawsuit. The dismissal of the claim for cure, though not maintenance, could be proper under settled principles of summary judgment, if it is established that Pelotto rejected curative treatment offered in fact by the United States Public Health Service Hospital.

▮▮▮ An employer or shipowner's duty to provide maintenance and cure, may ordinarily be discharged by tender and treatment at a United States Public Health Service Hospital, and "a seaman who refuses such . . . free treatment . . . without just cause, cannot further hold the shipowner to his duty to provide maintenance and cure." *Kossick v. United Fruit Co.,* 1961, 365 U.S. 731, 737, 81 S.Ct. 886, 891, 6 L.Ed.2d 56, 61, 1961 A.M.C. 833, 838. *See also Hokanson v. Maritime Overseas Corp.,* E.D.La.,1974, 1974 A.M.C. 948, 955. That "rule of forfeiture," *see Oswalt v. Williamson Towing Co.,* 5 Cir., 1974, 488 F.2d 51, 53, 1974 A.M.C. 1311, 1313, has important qualifications, however. One qualification, which Pelotto invokes on appeal, is that demonstrated inadequacy in the treatment tendered by a public hospital will permit recovery of the cost of private treatment. This qualification was set out by the Supreme Court in *Kossick v. United Fruit Co., supra,* 365 U.S. at 737, 81 S.Ct. at 891 (emphasis supplied):

> [W]e nevertheless are clear that the duty to afford maintenance and cure is not simply and as a matter of law an obligation to provide for entrance to a public hospital. . . . Presumably if a seaman refuses to enter a public hospital or, having entered, if he leaves to undergo treatment elsewhere, he may recover the cost of such other treatment *upon proof that "proper and adequate" cure was not available at such hospital.*

▮▮▮ This quoted passage clearly indicates that once the services of a public hospital have been properly tendered, the seaman bears the burden of proving that

---

. . . [T]he underlying idea that the plaintiff is entitled to successive recoveries . . . seems never to have been doubted.
*See also Sobosle v. United States Steel Corp.,* 3 Cir., 1966, 359 F.2d 7, 1966 A.M.C. 886; *Jewell v. The Ohio River Co.,* W.D.Pa., 1967, 1967 A.M.C. 1724.

**12.** The matter would be different if an identifiable finding had been made fixing the time of maximum recovery.

**13.** We have recognized this fact in the damages area:
In other words, while some of the elements of damages may overlap, a payment under the

obligations to provide maintenance and cure, for example, will not necessarily satisfy all the elements of damages allowable under the right to recover for unseaworthiness of the vessel.
*Cates v. United States, supra,* at 417 n.20.

**14.** *See* note 1, *supra.* We do not quarrel with the notion that a seaman is *permitted* to file all of his claims in one action. The cases make clear, however, that this is a "permissive joinder" and that a seaman is not *required* to join all claims at once. *See* note 9, and accompanying text, *supra.*

those services are inadequate.[15] As discussed, the parties stipulated (see note 3, supra) that further cure at the United States Public Health Service Hospital was "tendered to" and rejected by Pelotto. So far as it goes this would permit summary judgment, as it is well established that "[s]tipulations are a proper evidentiary basis for a summary judgment." *Munoz v. International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators*, 5 Cir., 1977, 563 F.2d 205, 213. *See also Menard v. Penrod Drilling Co.*, 5 Cir., 1976, 538 F.2d 1084. Here, defendants' tender, if proper, and Pelotto's rejection were established in accordance with F.R. Civ.P. 56.

But what is not adequately established for this purpose is who or what agency "tendered" further treatment by the Public Health Hospital. If the Public Health Hospital offered in reasonably unmistakable terms that it would furnish such "cure" as found by it to be reasonably appropriate, then Pelotto is confined to the defense that such treatment would be inadequate. If, on the other hand, the "tender" was that only of the employers (or their counsel), that would be insufficient to trigger outright this "rule of forfeiture." In the latter instance, the most that tender would do is "forfeit" that part of the "cure" which in fact would have been afforded by the Public Health Hospital. Tender would not go to that which the Public Health Hospital would not have provided.

If, on remand, by proof or stipulation, it is established that the "tender" was by the United States Public Health Service Hospital, and not the employers, then tender was clearly proper, and based upon accepted principles of summary judgment, it was appropriate to grant summary judgment as to the cure claim. Partial

summary judgment was appropriate because instead of responding by affidavits "made on personal knowledge," F.R.Civ.P. 56(e), Pelotto merely asserted that the inadequacies of the Public Health Hospital would be shown upon trial. Pelotto's response was clearly a procedural defect under Rule 56(e), which requires the submission of controverting affidavits. Since Pelotto had the burden of proving inadequacy, his failure to submit controverting affidavits or other factual proof entitled the District Judge to enter summary judgment against him. Allegations that one "might could" show certain facts at trial are simply insufficient under Rule 56(e). *Gossett v. Du-Ra-Kel Corp.*, 5 Cir., 1978, 569 F.2d 869, 872; *Oglesby v. Terminal Transport Co.*, 5 Cir., 1976, 543 F.2d 1111, 1112; *Bruce Construction Corp. v. United States*, 5 Cir., 1957, 242 F.2d 873, 875. In summary, we agree in part with the District Judge's expression of legal principles concerning forfeiture of cure, but reverse and remand for determination of, among other things, whether cure was properly tendered.

An expansive reading of the "rule of forfeiture" might indicate that a finding of forfeiture ought to apply to both the maintenance and the cure claims of this lawsuit. Under the facts of this case, however, we do not feel that the rule should automatically apply to Pelotto's maintenance claim. In *Kossick v. United Fruit Co., supra*, 365 U.S. at 737, 81 S.Ct. at 891, the Supreme Court made it clear that it only intended to protect the employer from " 'the increased expense which [the seaman's] whim or taste [in refusing public hospital services] has created.' " Thus, it is only the *additional* maintenance and cure expense which is *caused by* a seaman's unjustified rejection of public hospital treatment that is not recoverable by the seaman.[16] Additionally, there likely could be

---

**15.** The locus of the burden of proof is reinforced by a further statement in *Kossick v. United Fruit Co., supra*, 365 U.S. at 737, 81 S.Ct. at 891:

No matter how skeptical one may be that such a burden of proof could be sustained, or that an indigent seaman would be likely to

risk losing his rights to free treatment on the chance of sustaining that burden, . . . we should not exclude that possibility as a matter of law . . . .

**16.** The lower court cases, though broadly worded, can be read in this fashion. *See, e. g., Coulter v. Ingram Pipeline, Inc.*, 5 Cir., 1975,

"maintenance" costs during the "cure" being afforded by the Public Health Hospital during, for example, outpatient status. Thus, under the facts of this case, even a forfeiture of cure would not automatically forfeit the right to all maintenance.

 Of course Pelotto bears the burden of establishing his right to maintenance. He must show that maximum cure has not been attained and, in this case, the extent to which it has not been delayed as a result of his rejection of public hospital care. These are clearly fact questions. *Murphy v. Light,* 5 Cir., 1958, 257 F.2d 323, 327, 1959 A.M.C. 625, 630–31. *Cf. Coulter v. Ingram Pipeline, Inc., supra*; *Koslusky v. United States,* 2 Cir., 1953, 208 F.2d 957, 1953 A.M.C. 698. Resolving all doubts against the defendants, *see* F.R.Civ.P. 56(c), *Southern Distributing Co. v. Southdown, Inc.,* 5 Cir., 1978, 574 F.2d 824, 826, the maintenance claim presents several genuine issues of material fact. The grant of summary judgment as to Pelotto's maintenance claim was therefore in error. *See United Fruit Co. v. Sumrall,* 5 Cir., 1960, 273 F.2d 735, 737 (Brown, J., concurring). Thus we reverse and remand as to the maintenance claim.[17]

### A Word Of Caution

 Although *res judicata* and collateral estoppel do not cut off, as a matter of law, the claims for maintenance and cure subsequent to the earlier trial, the District Court on remand is entitled to consider as a fact[18] the extent to which the prior jury award probably included amounts which are the substantial equivalent of maintenance and, if appropriate, cure, in order to eliminate the likelihood of double recovery. *See*

*Gaudet v. Sea-Land Services, Inc.,* 5 Cir., 1972, 463 F.2d 1331, 1333, 1972 A.M.C. 2573, 1275–76, *aff'd,* 1974, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9, 1973 A.M.C. 2572. *See also* G. Gilmore & C. Black, *supra* at 293 (which emphasizes the pitfalls when counsel, deliberately, accidentally or unknowingly, either causes or permits the maintenance and cure claims to be split off from the Jones Act/maritime law claims).

REVERSED and REMANDED.

---

511 F.2d 735, 738–39, 1975 A.M.C. 826, 829–32; *Oswalt v. Williamson Towing Co., supra,* at 53–54; *Sanford Bros. Boats, Inc. v. Vidrine,* 5 Cir., 1969, 412 F.2d 958, 973–74, 1969 A.M.C. 1706, 1726–28; *George v. Chesapeake & Ohio Railway Co.,* E.D.Va., 1969, 348 F.Supp. 283, 287–89.

**17.** On remand, the trial judge may wish to consider Pelotto's claims that maintenance was "arbitrarily and capriciously" withheld in light of the provision in the letter agreement, *see*

note 3, *supra,* requiring that defendants be "furnished with appropriate medical reports."

**18.** The Judge is entitled to consider the record of the earlier trial including the charge to the jury and the verdict.

*Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.