**MARITIME OVERSEAS CORPORATION,**
**Appellant,**

v.

**Louis H. THOMAS, Appellee.**

**No. B14–83–830–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 12, 1984.

Thomas B. Greene, III, Crain, Caton, James & Womble, Houston, for appellant.

Allen H. Kline, Jr., Houston, for appellee.

Before PAUL PRESSLER, ROBERTSON and ELLIS, JJ.

## OPINION

ROBERTSON, Justice.

This is an appeal from an award for maintenance. The issue before us is the sufficiency of the evidence to sustain the jury finding of the date upon which appellee reached maximum medical care. We modify and affirm.

Maintenance and cure are centuries old remedies under the general maritime law, due the seaman without regard to the negligence of the employer or the seaworthiness of the ship. A seaman's right thereto is implicit in the contractual relationship between him and his employer, and is designed to ensure the recovery of these individuals upon injury or sickness sustained in the service of the ship. *Pelotto v. L & N Towing Company*, 604 F.2d 396 (5th Cir.1979). Maintenance in a per diem living allowance, determined by the contract between the union and the ship owner, paid so long as the seaman is outside the hospital and has not reached the point of "maximum cure." Cure involves the payment of therapeutic, medical and hospital expenses not otherwise furnished to the seaman until the point of "maximum cure." Maximum

cure is achieved when it appears probable that further treatment will result in no betterment of the seaman's condition. *Pelotto,* supra.

Appellee, a crew messman aboard the S/T OVERSEAS ANCHORAGE, was injured on February 25, 1977. Subsequently, he filed a suit for damages based upon negligence and unseaworthiness; additionally he sought maintenance and cure. The jury found no negligence and found the ship seaworthy. Upon the disputed issue of when appellee reached maximum medical cure, the jury determined that date to be June 24, 1978.

In his sole ground of error appellant challenges, upon both legal and factual grounds, the sufficiency of the evidence to sustain this finding. We first address the legal sufficiency of the evidence, applying the usual test to determine if there is *any* evidence to support the finding.

The tanker, on which appellee was employed, was docked at New Haven, Connecticut. While leaving the ship to do some shopping in town, appellee fell and injured his hip or lower back. The next morning he complained of pain and as a result was relieved from work duties. When the ship returned to Houston on March 4, 1977 he sought and received therapy treatment on a regular basis from the Public Health Service Hospital until July 13, 1977 when he asked to be made "fit for duty" and was given a prospective "fit for duty" certificate in two weeks. While being treated at the Public Health Hospital he was also being treated by Dr. McGehee, a private physician, to whom he had been referred by his attorney. He first saw Dr. McGehee on May 10, 1977 and received numerous physical therapy treatments until July 18, 1977 when he was given a medical discharge and permission to return to work with no restrictions. He did not receive any medical treatment between July 18, 1977 and December 8, 1978 when he returned to Dr. McGehee complaining of pain and received eighteen additional therapy treatments. He again returned to Dr. McGehee on December 27, 1978 for an evaluation at the request of his attorney. He was finally discharged by Dr. McGehee again on May 4, 1979.

As far as we can discern from this record, appellee had never returned to work as a seaman at any time prior to trial. We do not know whether he sought such employment. He did testify that the shipping industry was on the decline, leaving the impression it was difficult to sign on. There was, however, evidence to the contrary. Be that as it may, appellee worked as a taxi driver, a job he previously had, and additionally operated a lounge for sometime. His testimony was that he suffered pain at times, requiring him to take rest periods.

▮ Appellee received no medical treatment during the period from July 18, 1977 and December 8, 1978. While Dr. McGehee appeared to testify that appellee continued to take muscle relaxer medication during that period of time, such testimony is without any probative value because he never saw appellee during that time. Appellee did not testify concerning the ingestion of any medication nor did he testify as to any physical therapy treatments taken at home or elsewhere after July 18, 1977. While Dr. McGehee found a 75% narrowing of the intervertebral space at the lumbosacral level, he testified such condition preexisted the injury and was possibly congenital. The purpose of all his treatments to appellee was to relieve pain. When he released appellee on July 18, 1977 appellee stated to him "that he was having no pain in his back at that time." While Dr. McGehee testified at trial that it was his opinion that appellee did not reach maximum medical cure until some sixteen months following the accident, we find there was not a factual basis for such opinion. This opinion is therefore without probative value.

▮ A few basic principles of federal maritime law need be recited. Maintenance and cure "remedies do not operate as substitutes for damages; they are not general compensation, but rather are directed toward the specific objective of providing for the subsistence and medical expenses

of a seaman until he has reached the point of maximum possible cure." *Oswalt v. Williamson Towing Company, Inc.,* 488 F.2d 51, 54 (5th Cir.1974). A seaman is not entitled to maintenance and cure if he is not sufficiently ill or disabled *to make advisable some kind of medical attention. Pyles v. American Trading & Production Corp.,* 372 F.2d 611 (5th Cir.1967). Where it appears that *future medical treatment* will merely relieve pain and suffering but not otherwise improve the seaman's physical condition, it is proper to declare that the point of maximum cure has been achieved. *Pelotto,* supra. And because an award of maintenance and cure is intended to compensate the injured seaman for monies necessarily spent for ordinary support and medical expenses during the course of *treatment,* it is essential for such recovery that the seaman actually incur these expenses. *Brown v. Aggie & Miller, Inc.,* 485 F.2d 1293, 1296 (5th Cir.1973). And in *Brown,* the court made it clear that when the seaman (1) refuses treatment, (2) is cared for through independent largesse or (3) avails himself of a public facility, the law clearly requires that no maintenance and cure be given for the days voluntarily spent *without care* or under public or private charity. If this is true, then it logically follows that the seaman may not receive maintenance if he is not receiving some type of medical care. Payments for maintenance and cure are to be limited to the period the seaman was actually undergoing "cure"—that is while he is undergoing medical treatment tending to improve his physical condition. *Ryan v. United States Lines Company,* 303 F.2d 430, 432 (2nd Cir.1962).

We think that applying these established principles of law to the evidence before us compels the conclusion that maximum medical cure was attained on July 18, 1977, because there is no evidence that appellee received medical treatment after this date which tended to improve his condition. There is no evidence to support the jury verdict that such date was June 24, 1978, and we so hold. The evidence shows that appellee was paid maintenance

through June 22, 1977. Appellant agrees that he is entitled to maintenance for an additional 26 days or through July 18, 1977, and we agree. There is no reason for the judgment to be reversed; we may modify it.

The judgment is modified by changing the award for maintenance from $2,920 to the amount of $208, that being the stipulated rate of $8.00 per day for 26 days. On the issue of costs of the appeal, the effect of our opinion is the same as a reversal. We therefore tax the appellate costs against appellee. As modified, the judgment is affirmed.