Opinion issued April 22, 2010.

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-08-00647-CV

———————————

Diamond Offshore Management Co. and Diamond Offshore Services Co., Appellants

V.

Jonathan
Cummings,
Appellee



 



 

On Appeal from the 190th District Court

Harris County, Texas



Trial Court Case No. 2005-09209

 



 

MEMORANDUM  OPINION

          Appellants,
Diamond Offshore Management Company and Diamond Offshore Services Company
(together, “the Diamond parties”), appeal from a judgment, rendered after a
bench trial, in an admiralty case.  We
determine whether the trial court’s award of future maintenance and cure to
appellee, Jonathan Cummings, was in clear error.  We reverse that portion of the judgment awarding
cure, we affirm that portion of the judgment awarding maintenance and
determining the date of maximum medical improvement (“MMI”), and we remand the
case.

BACKGROUND

          Cummings
was an employee of Diamond Offshore Management Company and a crewmember of the
OCEAN SPARTAN, a jack-up rig owned by Diamond Offshore Services Company.   Cummings,
a floor hand, was injured when he fell from the OCEAN SPARTAN’s personnel
basket while being transferred onto a crew boat.  Cummings injured his shoulder, neck, and
back.

          Cummings
sued the Diamond parties, along with two other entities that were dismissed
before trial and are not parties to this appeal, for the vessel’s
unseaworthiness, negligence under the Jones Act,[1] and maintenance and cure.   Trial was to the court.  The court found that no negligence or fault
of the Diamond parties caused Cummings’s injuries and that the OCEAN SPARTAN
was seaworthy.  The court found that
Cummings’s fall caused injuries that required medical treatment in the past,
but that no past medical expense or cure obligation was owed due to a
stipulation that the parties had entered into before trial.  The court further found that the fall caused
injuries that would require medical treatment in the future and, likewise, that
Cummings would “in reasonable probability incur medical expenses in the
future.”  The court found that Cummings’s
MMI would be reached on August 18, 2008, which was six months from the start of
trial.  The trial court concluded that
Cummings was entitled to $112,500 of cure. 
The court also concluded that Cummings was entitled to maintenance of
$4,500, based on the MMI and the maintenance rate of $25 per day that the court
had also found.  

The court rendered a take-nothing
judgment on Cummings’s claims for negligence and unseaworthiness; awarded
Cummings $4,500 in future maintenance; awarded him $112,500 in future cure; and
recited that MMI would be reached on August 18, 2008.  Only the Diamond parties appeal.

MAINTENANCE AND CURE

          In
three issues, the Diamond parties challenge that portion of the judgment that
awarded future maintenance and cure to Cummings.  Specifically, they contend that 

●       Cummings’s
right to maintenance and cure “terminated because he ceased to avail himself of
curative treatment”;

 

●       the
trial court erred in declaring a future date of MMI;

 

●       the
trial court erred in awarding a lump sum for future maintenance and for future
cure because (i) “there is no obligation to prepay maintenance and cure” and
(ii) Cummings’s future back surgery was only a possibility, rather than a definitely
ascertainable event; and 

 

●       the
trial court erred in determining the dollar amount of future cure awarded.

 

A.      The Law

          Maintenance
and cure are creatures of the general maritime law.  “When a state court hears an admiralty case,
that court occupies essentially the same position occupied by a federal court
sitting in diversity: the state court must apply substantive federal maritime
law but follow state procedure.”  Mar. Overseas Corp. v. Ellis, 971 S.W.2d
402, 406 (Tex. 1998).    In a maintenance-and-cure case, we review a
trial court’s findings of fact for clear error and its conclusions of law de
novo.  See Silmon v. Can Do II, Inc., 89 F.3d 240, 242 (5th Cir. 1996).  “[R]eview under the ‘clearly erroneous’
standard is significantly deferential, requiring a ‘definite and firm
conviction that a mistake has been committed.’” 
Concrete Pipe & Prods. of CA,
Inc. v. Constr. Laborers Pension Trust for S. CA.,  508 U.S. 602, 623, 113 S. Ct. 2264, 2280
(1993) (quoting United States v. United
States Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525, 542 (1948)); see Fed.
R. Civ. P. 52a(6) (“[T]he reviewing court must give due regard to the
trial court’s opportunity to judge the witnesses’ credibility.”). 

          “Maintenance
and cure is an ancient remedy peculiar to Admiralty Law arising out of contract
and not negligence.”  Socony-Vacuum Oil Co. v. Aderhold, 240
S.W.2d 751, 754 (Tex. 1951).  “Maintenance
is a per diem living allowance paid so long as the seaman is outside the
hospital . . . ,” while “[c]ure involves the payment of therapeutic, medical
and hospital expenses not otherwise furnished to the seaman . . . .”  Prude
v. W. Seafood Co., 769 S.W.2d 663, 664 (Tex. App.—Houston [14th Dist.]
1989, no writ).  “Maintenance and cure .
. . extends during the period when [the seaman] is incapacitated to do a
seaman’s work and continues until he reaches maximum medical recovery.”  Vaughan
v. Atkinson, 369 U.S. 527, 531, 82 S. Ct. 997, 1000 (1962).  Maximum medical recovery “is achieved when it
appears probable that further treatment will result in no improvement of the
seaman’s condition.”  Prude, 769 S.W.2d at 664.  “Admiralty courts have been liberal in
interpreting this [maintenance-and-cure] duty ‘for the benefit and protection
of seamen who are its wards.’”  Vaughan, 369 U.S. at 531-32, 82 S. Ct.
at 1000 (quoting Calmar S.S. Corp. v.
Taylor, 303 U.S. 525, 529, 58 S. Ct. 651, 654 (1938)).  Accordingly, “[w]hen there are ambiguities or
doubts [concerning maintenance and cure], they are resolved in favor of the
seaman.”  Id.

B.      Termination for Failure to Avail Self of
Curative Treatment

          In
issue one, the Diamond parties contend that Cummings’s right to maintenance and
cure “terminated because he ceased to avail himself of curative
treatment.”  They argue that Cummings
“has repeatedly ignored the numerous recommendations of his treating physicians
to have lower back surgery . . . thereby ceasing to avail himself of curative
treatment.”  The Diamond parties consider
this to have been a willful “reject[tion of] the recommended medical treatment”
for his back so that their “obligation to provide additional maintenance and
cure to [Cummings] has terminated.”

          “The
general rule is well settled that a seaman’s right to maintenance and cure is
forfeited by a willful rejection of the recommended medical aid.”  Coulter
v. Ingram Pipeline, Inc., 511 F.2d 735, 737 (5th Cir. 1975).  “However, this rule is not inexorably applied
and exceptions exist when reasonable grounds for refusing care or failing to
follow instructions are shown.”  Id. 
“The question then is whether there existed any extenuating
circumstances which made the [seaman’s] failure to follow the prescribed
regimen either reasonable or something less than a willful rejection.”  Id. at
738.  

          The
trial court concluded that Cummings was entitled to future medical cure.  In support, the trial court found that
Cummings would in reasonable probability incur future medical expenses for his
injuries, that he would require necessary medical care in the future due to
those injuries, and that he would reach MMI after a six-month period.  Assuming without deciding that the trial
court also implicitly found that Cummings did not willfully reject the
recommended back surgery,[2] we hold that that implicit
finding was not clearly erroneous.  

          Cummings
was injured on December 16, 2004.  Dr.
Donovan, Cummings’s principal treating physician, first saw Cummings on
December 27, 2004, for back, neck, and shoulder pain.  Between then and January 6, 2005, Dr. Donovan
saw Cummings twice.  

In February 2005, Dr. Donovan
operated on Cummings’s shoulder.  Around
October 21, 2005, Dr. Donovan sent Cummings to Dr. Tomaszek, although Cummings
did not see Dr. Tomaszek until two months later.  Dr. Tomaszek recommended neck surgery for
Cummings on December 20, 2005.  The same
day, Dr. Donovan also recommended a partial diskectomy on Cummings’s lower
back.  

Cummings did not see Dr. Donovan between
the December 20, 2005 evaluation and November 2006, although he did visit him
in May or June of that year and again the week before trial in February 2008.  However, during part of 2006, Cummings underwent
conservative treatment, including physical therapy and two rounds of epidural
steroid injections to his neck and lower back, the latter procedures having
been ordered by Dr. Donovan.  

In September 2007, Dr. Tomaszek
performed Cummings’s neck surgery—five months before trial. Cummings did home exercises for his neck
afterwards.  

Cummings admitted at trial that the
back surgery “ha[d] not [yet] happened.” 
However, he also testified that he still had problems with his lower
back, which interfered with his bending, stooping, and lifting; that he felt
that he needed the back surgery; and that, if the surgery were authorized that
very day, “I would take it.”  

Jimmy Robicheaux, the Diamond
parties’ claims manager for Cummings’s case, admitted

●       that he
recalled Dr. Donovan’s June 2006 deposition testimony that Cummings needed
lumbar surgery,

 

●       that
“shortly after” that June deposition the Diamond parties “received
correspondence through [their] lawyers” from Cummings’s counsel “requesting
that Diamond make arrangements so that Mr. Cummings could get that surgery,”[3] and 

 

●       that in
February 2008, just before trial, “Dr. Donovan continue[d] to insist that Mr.
Cummings needs that surgery.”  

 

Nonetheless, as of June 2006, Dr. Donovan testified
that the Diamond parties had not yet corresponded with him to advise that they
were ready, willing, and able to pay for medical bills that Cummings had by
then incurred.  The Diamond parties point
to no evidence that they advised Cummings or Dr. Donovan that they had agreed
to pay the reasonable expenses of his surgery. 
And the trial court could reasonably have inferred that the Diamond
parties had not authorized such surgery before trial because Robicheaux testified
at trial that “right now” and “today” they were authorizing Cummings’s back
surgery.  Finally, Cummings testified
that the neck surgery was not approved or authorized until July 2007, that the
neck surgery occurred only two months after the Diamond parties approved it,
that the only way that Dr. Tomaszek would perform that surgery was if he had a
deposit, and that Cummings’s counsel paid that deposit on Cummings’s
behalf.  The Diamond parties point to no similar
evidence that they approved reasonable expenses for back surgery for Cummings.

          The
above is some evidence to support any possible implicit finding that Cummings’s
failure to have back surgery was “something less than a willful rejection,” see Coulter,
511 F.2d at 738, because between Dr. Tomaszek’s recommendation of surgery in
December 2005 and trial (1) Cummings was at times undergoing other surgeries,
conservative medical treatment, or independent medical examinations for his
shoulder, neck, and back or (2) the Diamond parties had not authorized or
guaranteed the reasonable costs of such surgery.  

The Diamond parties counter that any
contention that the back surgery did not occur because they refused to
authorize it is unfounded because (1) they “had an absolute right to
investigate [Cummings’s] claim for maintenance and cure and to obtain [his]
medical records from the treating physicians that he selected”; (2) Cummings
did not authorize Dr. Donovan to give them any medical records until after suit
was filed; and (3) “against these facts, it is simply absurd to give any
credence to [Cummings’s] self-serving testimony” that he would have the surgery
if it were now authorized.

However, the Diamond parties admit
that their counsel obtained Cummings’s medical records after suit was filed in
February 2005, and Robicheaux testified that Cummings’s authorization for
medical records was served on the Diamond parties in early June 2005.  Robicheaux admitted that whatever discovery
was obtained by the Diamond parties’ counsel would have been maintained in his
file and that he would have reviewed it. 
Therefore, by their own admission, the Diamond parties had received, by
mid-2005, an authorization to obtain Cummings’s then-extent medical records.  They do not explain how a delay of six months
from their initial request for records would have hampered their investigation
of Cummings’s need for back surgery, the need for which Dr. Donovan again conveyed
to them in June 2006 and February 2008.

Finally, we generally defer to the
fact finder’s credibility determinations, such as the trial court’s implicitly finding
credible Cummings’s testimony that he would have the surgery.  See,
e.g., Exxon Co. v. Sofec, Inc.,
54 F.3d 570, 576 (9th Cir. 1995) (“Special
deference is paid to a trial court’s credibility  findings.”), aff’d on other grounds, 517 U.S. 830, 116 S. Ct. 1813 (1996).

          We
overrule issue one.

C.      Declaration of MMI

          In
issue two, the Diamond parties argue that the trial court erred in declaring a
future MMI date.

          Dr.
Donovan twice testified by deposition, without contradicting expert testimony,[4] that he anticipated that
Cummings would reach MMI six months after he had the surgeries to his neck and
his lower back.  The doctor also
testified that he thought that Cummings’s “prognosis” would be “very good” if
Cummings had the neck and back surgery because Cummings “is a motivated man . .
. a young man, and we can get him back with some kind of work, sure.”  Although the doctor also testified that the
“worst case scenario” would be that Cummings “just never gets better and
becomes a chronic-pain patient,” the trial court would not have clearly erred
in discounting this last bit of testimony,
i.e., the court could reasonably have concluded that the doctor did not
anticipate that the worst case scenario would occur, based on his other
testimony, which was phrased in terms of the doctor’s anticipation and the
patient’s prognosis.  This evidence
supports the trial court’s determination that MMI would be reached in six
months.

          The
Diamond parties nonetheless argue that the trial court clearly erred.  First, they note that the conclusions in the
report of the independent medical examination conducted by a Dr. Wood as to the
condition of Cummings’s spine and the efficaciousness of surgery conflicted
with those of Dr. Donovan; they further contend that Dr. Donovan’s own
conclusions were not unequivocal because he gave best- and worst-case scenarios
for Cummings’s recovery.  They then
indicate that the medical determination of MMI must be unequivocal for a
finding based on it to stand.  

          This
is not what the law cited by the Diamond parties provides, however.  Rather, those cases provide that a medical determination
to terminate a seaman’s right to
maintenance and cure must be unequivocal. 
See Johnson v. Marlin Drilling Co.,
893 F.2d 77, 79 (5th Cir. 1990); Tullos
v. Res. Drilling, Inc., 750 F.2d 380, 388 (5th Cir. 1985).  This rule of law accords with the Supreme
Court’s mandate that “[w]hen there are ambiguities or doubts [concerning
maintenance and cure], they are resolved in favor of the seaman” because seamen
are wards of the courts.  See Vaughan, 369 U.S. at 532, 82 S. Ct.
at 1000.  However, when a fact finder in
an admiralty case is faced with conflicting medical evidence of a seaman’s medical
condition, the fact finder must resolve that conflict with an eye toward the
mandate that ambiguities or doubts are to be resolved in favor of maintenance
and cure.  See Mar. Overseas Corp. v. Waiters, 923 S.W.2d 36, 41 (Tex.
App.—Houston [1st Dist.] 1995) (“Because of this rule [in Vaughn to resolve doubts in favor of seaman in maintenance-and-cure
case], when the opinions of doctors are in conflict regarding the seaman’s
condition, the court must resolve the conflict in favor of the seaman’s right
to maintenance and cure.”), mod’d on
other grounds & aff’d as modified, 917 S.W.2d 17 (Tex. 1996).  If the Diamond parties were correct in their
position, then fact finders could never
award maintenance or cure when medical testimony conflicted, despite the
mandate in Vaughn.  This is not the law.

          We
overrule issue two.

D.      Prepayment of Maintenance and Cure &
Surgery’s Possibility

          In part
of issue three, the Diamond parties argue that the trial court clearly erred in
awarding a lump-sum payment for future maintenance and cure.  Specifically, they contend that (1) the law
does not require them to prepay maintenance and cure in a lump sum and (2) even
if it does, a lump sum for future maintenance and cure could not be awarded
here because Cummings’s surgery is only a mere possibility.

           The Supreme Court has observed that “[t]he
award of a lump sum in anticipation of a continuing need of maintenance and
cure for life or an indefinite period
is without support in judicial decision.” 
Calmar S.S. Corp. v. Taylor,
303 U.S. 525, 530, 58 S. Ct. 651, 654 (1938) (emphasis added); accord Farrell v. United States, 336
U.S. 511, 519, 69 S. Ct. 707, 711 (1949) (“But maintenance and cure is more
certain if more limited in its benefits. It does not hold a ship to permanent liability for a pension, neither
does it give a lump-sum payment to offset disability based on some conception of expectancy of life.”) (emphasis added).  However, the Supreme Court has also observed
that “[a]wards of small amounts to cover future maintenance and cure of a kind and for a period definitely
ascertained or ascertainable have occasionally been made.”  Calmar
at 530-31, 58 S. Ct. at 654 (emphasis added). 
Courts relying on Calmar have
generally recognized that although lump-sum awards for maintenance and cure are
ordinarily not made, lump-sum awards may be made for future maintenance and
cure of the limited and ascertainable type described in Calmar.  See, e.g., Pelotto v. L&N
Towing Co., 604 F.2d 396, 401 (5th Cir. 1979).  The Texas Supreme Court has also applied this
holding of Calmar.  See
Aderhold, 240 S.W.2d at 758 (“Defendant argues that our discussion of
maintenance is in conflict with Calmar
. . . in providing for future maintenance. 
We do not so construe it.  The
plaintiff is limited by a finding of the definite time at which he will obtain
his maximum cure.  What we have said is
consistent with the Calmar case.”); see also Premeaux v. Socony-Vaccuum Oil Co.,
192 S.W.2d 138, 142 (Tex. 1946) (quoting Calmar’s
pertinent holding in dictum).

          In
this case, the trial court found that Cummings would reach MMI after six
months, which the court calculated from the date of trial.  As discussed before, the trial court could
reasonably have credited Dr. Donovan’s testimony that he believed that Cummings
would reach MMI six months after his last surgery.  The Diamond parties do not contest the
finding that the maintenance rate was $25 per day.  Applying both of these findings, the trial
court concluded that Cummings was entitled to $4,500 in future
maintenance.  And based on its further findings
that Cummings would in reasonable probability incur future medical expenses for
his injuries and that he would require necessary future medical care, the trial
court concluded that Cummings was entitled to future cure of $112,500, which
conformed to Dr. Donovan’s estimates for costs of surgery, medication, and
rehabilitation.[5]  There was evidence that Cummings needed the
lower-back surgery and that it was the sole remaining recommended surgery for
his injuries, and Cummings testified that he would have the surgery if it was
authorized.  

          On
this evidence, the trial court did not clearly err in implicitly concluding
that a lump-sum award of future maintenance for this fixed period, and of
future cure for this one remaining procedure and subsequent rehabilitation,
could be granted because they were “of a kind and for a period definitely
ascertained or ascertainable.”  Calmar at 531, 58 S. Ct. at 654; see also Morales v. Garijak, Inc., 829
F.2d 1355,  (5th Cir. 1987) (holding that
award for future maintenance and cure was supported by physician’s testimony
that surgery was necessary and would require five months of rehabilitation, and
that second surgery might have to be redone if first surgery did not succeed,
with worst-case scenario of 1.5 years of treatment and recuperation; modifying
judgment to award same until MMI was achieved, as it was impossible to fix
precise date of MMI); Lirette v. K&B
Boat Rentals, Inc., 579 F.2d 968, 969 (5th Cir. 1978) (affirming summary
judgment awarding future maintenance and cure to claimant “until he has reached
maximum cure,” concluding that judgment did not contravene Calmar); Pallis v. United
States, No. 09-40088, 2010 WL 785171, at *7 (5th Cir. Mar. 9, 2010) (not
designated for publication) (holding that trial court clearly erred in denying
future maintenance because, in having found that claimant would incur future
medical expenses for physical therapy and knee replacement surgery, the court
“implied a definite period of time for the completion of that treatment” under Calmar and progeny, so that failure to
award future maintenance was error).

          The
cases cited by the Diamond parties are factually distinguishable or did not
involve awards of future maintenance or cure in lump sum.[6]

          The
Diamond parties further respond that Cummings could not be awarded a lump sum
because seamen have the right to bring serial suits to collect maintenance and
cure as it comes due.  See, e.g., Prude, 769 S.W.2d at 665; see
also Pelotto, 604 F.2d at 401 (recognizing that res judicata will not bar
such subsequent suits).  However, just
because a seaman may bring serial
suits to collect cure payments as they come due does not mean that he always must do so, rather than seeking a future
maintenance or cure in a single suit under appropriate circumstances, or that
that means is his exclusive remedy.  See Lirette, 579 F.2d at 970 (rejecting defendant’s argument that serial-suit
right is exclusive remedy of seaman, and affirming judgment for future
maintenance “until [seaman] has reached maximum cure”).  If that were a seaman’s sole remedy, then the
Supreme Court would not have recognized an exception for lump-sum awards of
future maintenance and cure “of a kind and for a period definitely ascertained
or ascertainable.”  E.g., Calmar 303 U.S. at 531, 58 S. Ct. at 654.  

          Likewise, the Diamond parties rely on Dominguez v. Marine Transport Management Co.
for their related position that a shipowner has no obligation to prepay for
medical tests or treatment.  1992 A.M.C.
2862, 2864 (E.D. La. 1992).  The cited
comment from Dominguez was mere
dictum, and in it, the court stated that it was “unable to find a single
precedent requiring that the maritime employer guarantee to pay for tests”
before they are done.  Id. 
This position is not universally held. 
See Sullivan v. Tropical Tuna,
Inc., 963 F. Supp. 42, 45 (D. Mass. 1997) (disagreeing with Dominguez court’s dictum and holding, “In
light of the realities of the current health care system, this Court observes
that an injured seaman often will be unable to obtain necessary medical
treatment unless he can first demonstrate the ability to pay.  As a result, the Court holds that a shipowner’s
duty to pay maintenance and cure encompasses a duty to guarantee payment prior
to treatment for all reasonable medical expenses. This ruling appropriately
upholds the principle set forth in Vaughan
v. Atkinson . . . .”); Weeks Marine,
Inc. v. Bowman, No. 04-0009, 2006 WL 2178514, at *2 (E.D. La. July 28,
2006) (not designated for publication) (adopting Sullivan court’s holding); Gorum
v. Ensco Offshore Co., Nos. Civ. A. 02-2030, Civ. A. 02-2031, 2002 WL
31528460, at *10 (E.D. La. Nov. 14, 2002) (not designated for publication)
(same); see also Eldridge v. Star Line,
No. 07-14810, 2009 WL 1513991, at *1 (E.D. Mich. May 29, 2009) (not designated
for publication).  In any event, the
issue before us is whether future cure may be awarded in a lump sum, and the
Supreme Court has clearly indicated that it can be, under the appropriate
circumstances.  See Calmar 303 U.S. at 531, 58 S. Ct. at 654.

          We
overrule this portion of issue three.

E.      Amount of Cure Awarded

          In
the remainder of issue three, the Diamond parties contend that Dr. Donovan’s estimates of reasonable
and necessary costs for future medical care were based on assumptions that were
“no longer accurate at the time of trial” because they included estimated costs
for neck surgery.  The neck surgery had
not taken place when Dr. Donovan was deposed, but it had been performed by the
time of trial, and the Diamond parties either had paid for it or had stipulated
to indemnify Cummings for it before trial. 
The Diamond parties pray that the judgment be reversed for that reason,
among others.  We interpret this as an
argument that the trial court committed clear error in implicitly finding that
the cost of future cure was $112,500, the amount of cure that the court
concluded Cummings should be awarded.  This
clear-error argument is akin to a factual-sufficiency challenge that the dollar
amount awarded was excessive.  Cf. Ellis, 971 S.W.2d at 406 (“The standard of review for
an excessive damages complaint is factual sufficiency of the evidence.”).

          By the time of trial, Cummings had had
his neck surgery and had recovered from it, and the trial court found that “no
past medical expense or past cure obligation is owed by [the Diamond parties]
due to the stipulation at trial to indemnify Cummings for these bills.”  The only remaining recommended surgery at the
time of trial was the surgery to Cummings’s lower back, including medication
and rehabilitation related to it.  The
estimate of future cure expenses in Dr. Donovan’s June 2006 deposition testimony,
which predated the neck surgery, clearly included costs related to both the
neck and back surgeries.  

          The trial court entered no findings of
fact as to how it reached the total sum that it awarded for future cure, and
the Diamond parties did not request additional findings of fact,[7]
but the only evidence of the amount of future medical expenses came from Dr.
Donovan’s deposition testimony, which does not support the full amount awarded
for the sole recommended surgery that remained. 
See Tex. R. Civ. P. 299 (“[B]ut when one or more elements [of a
claim or defense] have been found by the trial court, omitted unrequested
elements, when supported by evidence,
will be supplied by presumption in support of the judgment.”) (emphasis added).  The Diamond parties did not make this excessive-cure-award
argument below, but they did not have to because trial was to the court.  Cf.
Tex. R. App. P. 33.1(d) (“In a
nonjury case, a complaint regarding the . . . factual insufficiency of the
evidence—including
a complaint that the damages found by the court are excessive or inadequate, as
distinguished from a complaint that the trial court erred in refusing to amend
a fact finding or to make an additional finding of fact—may be made for the first time on appeal
in the complaining party’s brief.”).

          Many of the costs related to the back
surgery expressed in Dr. Donovan’s testimony can be separated from costs
related to the neck surgery, but some—specifically, those
for work conditioning, work hardening, and chronic pain management ($70,000
total)—cannot because the doctor’s testimony did not segregate them between
surgeries.  On this record, the trial
court clearly erred in concluding that the amount of future cure for the one
remaining surgery and its related costs was $112,500.

          We sustain this final portion of issue
three.

CONCLUSION

          We
affirm that portion of the judgment awarding maintenance and declaring the date
of MMI.  See Tex. R. App. P.  44.1(b). 
We reverse that portion of the judgment awarding cure.  See id.  The remainder of the judgment remains
intact.  We remand the case for further
proceedings not inconsistent with this opinion.

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Alcala and Higley.

 











[1]
          See 46 U.S.C.S. §30104 (2007).





[2]
          See Tex. R. Civ. P. 299
(“[W]hen one or more elements [of a ground of recovery or defense] have been
found by the trial court, omitted unrequested elements, when supported by
evidence, will be supplied by presumption in support of the judgment.”).  Cummings contends that the Diamond parties
have waived their issue one for not having pleaded willful rejection or sought
findings on it, arguing that willful rejection is an affirmative defense on
which they had the burden.  By reply
brief, the Diamond parties disagree that the matter is an affirmative defense
on which they had to request findings and argue that, even if it is, a finding
on it was implicit.  We need not resolve
these disputes because, in any event, the Diamond parties’ challenge based upon
any such implicit finding is unmeritorious for the reasons discussed below.





[3]
          Robicheaux later testified that
he did not remember seeing a request from Cummings’s counsel to authorize the
back surgery, but the trial court would not have clearly erred in discounting
this testimony because (1) it differed from his earlier acknowledgement that he
had in fact received such a request and (2) he admitted that he knew that Dr.
Donovan had twice recommended the surgery.

 





[4]
          The Diamond parties had
de-designated their medical experts before trial and did not call them to
testify.





[5]
          Whether the total amount awarded
for the sole remaining surgery and rehabilitation was clear error is discussed
further below.

 





[6]
          In both Farrell and Calmar,
the seaman sought maintenance and cure for life or without regard to MMI.  See Farrell v. United States, 336 U.S. 511, 518, 69 S. Ct. 707, 711
(1949); Calmar S.S. Corp. v. Taylor,
303 U.S. 525, 530, 58 S. Ct. 651, 654 (1938). 
Pelotto v. L&N Towing Co.concerned
whether res judicata, collateral estoppel, or rejection of free medical care
barred a serial suit for damages for failure to agree to provide care.  604 F.2d 396, passim (5th Cir. 1979).  In Haughton v. Blackships, Inc., the
appellate court upheld the trial court’s denial of a lump-sum payment for the
expense of future surgery to a seaman who admitted that he did not then
contemplate the operation.  462 F.2d 788,
789 (5th Cir. 1972).  In Bonneau v. Guidance Fishing Corp., the
trial court rejected a request for a lump-sum cure payment for future ankle-fusion
surgeries when “[n]one of the doctors’ opinions stated that an ankle surgery
would be necessary ‘in the immediate future,’” which made the future operations
only possibilities.  919 F. Supp. 46, 48
(D. Mass. 1996).  Here, in contrast, Dr.
Donovan repeatedly stated that Cummings needed the surgery; the medical tests
indicated that the injury and pain arising from it, which Dr. Donovan wanted to
treat by the recommended surgery, had existed from the start; and Cummings
stated that he would have the surgery that day if it were approved.  In Maritime
Overseas Corp. v. Thomas, the court considered a challenge to the jury’s
determination of MMI.  681 S.W.2d 160,
163 (Tex. App.—Houston [14th Dist.] 1984, no
writ).  The court in Springborn v. American Commercial Barge Lines, Inc. was considering
whether the jury’s finding of MMI underlying its award of maintenance (not
cure, as that award was not challenged), most of which was incurred before
trial, was supportable.  767 F.2d 89, 95
(5th Cir. 1985).  In a footnote, the
court rejected the claimant’s suggestion that the maintenance award could be
supported by a possible future surgery because “[w]ith no finding as to the
event—future surgery—or the duration, the mere possibility of future surgery in
this case was insufficient.”  Id.  n.19. 
And the Dupree v. Otis Engineering
Corp. court merely noted in dictum the general rule that lump-sum awards of
future maintenance and cure are ordinarily not made.  641 F.2d 229, 234 n.6 (5th Cir. 1981).





[7]
          See Tex. R. Civ. P. 298 (providing for request for additional
findings of fact).